In re Disqualification of Corrigan.

In re Guardianship of Muehrcke.

[Cite as *In re Disqualification of Corrigan,*
105 Ohio St.3d 1243, 2004-Ohio-7354.]

(No. 04–AP–083—Decided September 14, 2004.)

Moyer, C.J.

{¶ 1} Robert Muehrcke and Laura Muehrcke, two of the parties in a long-running probate matter, have filed affidavits with the Clerk of this court under R.C. 2701.03 and 2101.39, seeking the disqualification of Judge John E. Corrigan from acting on any further proceedings in case No. 2001–GDM–54818 in the Court of Common Pleas of Cuyahoga County, Probate Division. Appended to affiants' affidavits are several other affidavits of various attorneys in that case.

{¶ 2} The affiants contend that Judge Corrigan made disparaging remarks to the attorneys at pretrial conferences in July 2004, allegedly referring derisively to the expensive clothing and wristwatch worn by attorney Vincent Stafford, and referring to attorney Attilio Lepri and others as "jackasses." The judge also had attorney Lepri forcibly removed from the judge's chambers, according to the affidavits, and held a baseball bat while berating the lawyers.

{¶ 3} The affidavits also state that Judge Corrigan told the attorneys at a pretrial conference how he would ultimately decide the case, though he had not yet heard testimony from the parties. In addition, the affidavits allege that the judge held Robert Muehrcke in contempt and fined him $1,500 without holding a hearing and also granted attorney fees to the guardian for the Muehrckes' minor child without allowing the Muehrckes to contest the amount of the fees.

{¶ 4} Finally, affiant Robert Muehrcke alleges that the judge is a close friend of Robert Housel, who filed a motion to intervene in the case in July 2003. The judge granted the motion in July 2004, and affiant Robert Muehrcke alleges that the judge's friendship with Housel might affect the fairness and impartiality of any court rulings in the case.

{¶ 5} Judge Corrigan has responded to the affidavits, and he denies holding any feelings of bias or prejudice against the Muehrckes or their attorneys. He does fault Robert Muehrcke for delaying the case and for failing to cooperate with discovery demands, but the judge contends that he remains focused on the

goal of resolving the case fairly and justly. Judge Corrigan also denies that he has a personal relationship with attorney Housel that might interfere with the judge's impartiality.

{¶ 6} Attached to Judge Corrigan's response is an affidavit by attorney Richard Koblentz, the lawyer for the Muehrckes' minor daughter, Susan. He states that Judge Corrigan used the term "jackasses" and referred to a "crowbar" when decrying the slowness with which some parties approach discovery and while explaining the judge's role in forcing the parties to get moving. The judge also, according to the Koblentz affidavit, joked with the attorneys about the expensive clothing and jewelry that domestic-relations attorneys wear. Koblentz did not find the comments offensive, and he labels the remarks described in the affidavits of disqualification as "few" and "isolated" and not indicative of bias or prejudice.

{¶ 7} Attorney Alan Petrov has submitted an affidavit also. Petrov represents Robert Housel, the Muehrckes' former attorney. Petrov supports the version of events described by attorney Koblentz, and he says that Judge Corrigan never held a baseball bat or threatened anyone with one during the July pretrial conferences.

{¶ 8} After careful review of the nine affidavits filed in this case, as well as the judge's response, I find no basis for ordering the disqualification of Judge Corrigan. To be sure, the attorneys remember differently the events that occurred at the two July pretrial conferences, and the incidents described in some of the affidavits are troubling. In the wake of the conflicting stories presented by the various affiants, however, I cannot conclude that the judge is clearly biased and prejudiced, and certainly the judge himself states that he can resolve the case fairly and impartially.

{¶ 9} Some of the complaining affiants' objections turn on their disagreement with the judge's rulings on motions in recent weeks. That aspect of the case is easily resolved, for a party's disagreement or dissatisfaction with a court's rulings of law, without more, does not demonstrate bias or prejudice. *In re Disqualification of Murphy* (1988), 36 Ohio St.3d 605, 522 N.E.2d 459. I recognize that the affiants' allegations extend beyond their objections to the judge's rulings, but at least on that latter issue, their concerns are not ones that an affidavit of disqualification can remedy. See *In re Disqualification of Solovan,* 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4 (an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law").

{¶ 10} The judge's use of the word "jackasses" when evidently referring to attorneys who behave foolishly or who resolve cases too slowly was unfortunate, and his reference to the clothing and jewelry worn by some attorneys who practice in the domestic-relations field was unnecessary. As Canon 3(B)(4) of the

Ohio Code of Judicial Conduct says, judges should be "patient, dignified, and courteous" when speaking with litigants, lawyers, and others in an official capacity, and Canon 3(B)(5) of the Code admonishes judges to refrain from any words or conduct that might manifest bias or prejudice based on socioeconomic status and other improper factors. Judges are certainly entitled to express dissatisfaction with attorneys' dilatory tactics inside and outside the courtroom, but that dissatisfaction can and should be expressed in a way that promotes public confidence in the integrity, dignity, and impartiality of the judiciary. And remarks—even those made in jest—about attorneys' clothing are probably best left unsaid by judges during official proceedings.

{¶ 11} Despite those concerns, I am satisfied that the judge's words and actions do not reflect bias or prejudice, and they would not cause a reasonable and objective observer to harbor serious doubts about the judge's impartiality in this case. The judge's choice of words may not have been the best, and his reaction to statements made by others during the pretrial conferences may not have been ideal, but I do not see information in any of the affidavits suggesting that the judge is unable to decide the remaining issues in the case fairly and impartially. He has expressed his willingness to hear relevant evidence on the unsettled issues in the case, and he denies that his social familiarity with attorney Housel will affect his judgment about the merits of the issues still to be decided. In light of the differing recollections of those who were actually present for the two pretrial conferences, and in light of the judge's assurances, I conclude that Judge Corrigan should remain on the case.

{¶ 12} As I said recently, "[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.

{¶ 13} For the reasons stated above, the affidavits of disqualification are denied. The case shall proceed before Judge Corrigan.