IN RE DISQUALIFICATION OF SYNENBERG.

THE STATE OF OHIO *v*. D'AMBROSIO.

[Cite as *In re Disqualification of Synenberg,*

127 Ohio St.3d 1220, 2009-Ohio-7206.]

*Judges — Affidavit of disqualification — Disqualification denied.*

(No. 09-AP-033 — Decided June 10, 2009.)

ON AFFIDAVIT OF DISQUALIFICATION in Cuyahoga County Court of Common

Pleas Case No. CR-232189-B.

_____

MOYER, C.J.

{¶ 1}   William D. Mason, Cuyahoga County Prosecuting Attorney, and Assistant Prosecutors Lisa Reitz Williamson and Matthew E. Meyer have filed an affidavit with the clerk of this court under R.C. 2701.03 seeking the disqualification of Judge Joan Synenberg from acting on any further proceedings in case No. CR-232189-B, the death-penalty case of defendant Joe D'Ambrosio in the Court of Common Pleas of Cuyahoga County.

{¶ 2}   Affiants allege that Judge Synenberg has acted in a manner causing the state to reasonably question her impartiality and fairness. According to affiants, the judge (1) failed to disclose her role several years ago as a defense attorney for Thomas Keenan, D'Ambrosio's codefendant, (2) treated prosecutors with hostility and thereby deprived the state of a meaningful opportunity to participate in two hearings, and (3) inappropriately provided a journalist with a journal entry and other information that caused an inaccurate and inflammatory newspaper story, prejudicing the state's ability to obtain a fair trial.

{¶ 3}   Judge Synenberg has responded in writing to the concerns raised in the affidavit. The judge expressly denies ever representing Keenan. She further maintains that the record in the underlying case reflects that she has been fair, impartial, and respectful to all participants. In regard to the third allegation, Judge

Synenberg concedes that she provided an order to a newspaper columnist, but she denies any impropriety because that order had been rendered in open court and on the record one day earlier.

{¶ 4} Robert L. Tobik, counsel for D'Ambrosio, has also filed an affidavit in response. Tobik maintains that Judge Synenberg has been consistently polite and fair to all counsel throughout these proceedings. Moreover, he disputes the state's assertion that the judge has treated prosecutors with hostility or disrespect. Rather, Tobik states that Judge Synenberg has shown great restraint despite the fact that prosecutors have acted at times in a confrontational and abrupt manner.

**Background**

{¶ 5} In 1988, the state charged D'Ambrosio, Keenan, and Edward Espinoza with the aggravated murder of Anthony Klann. Keenan and D'Ambrosio were tried separately. Keenan was tried twice, convicted, and sentenced to death. See *State v. Keenan* (1998), 81 Ohio St.3d 133, 689 N.E.2d 929. D'Ambrosio was tried, convicted, and also sentenced to death. See *State v. D'Ambrosio* (1995), 73 Ohio St.3d 141, 652 N.E.2d 710.

{¶ 6} On March 24, 2006, the United States District Court, Northern District of Ohio, Eastern Division, found that the state had failed to disclose exculpatory evidence prior to trial and granted D'Ambrosio a conditional writ of habeas corpus. The Sixth Circuit affirmed. *D'Ambrosio v. Bagley* (C.A.6, 2008), 527 F.3d 489. Accordingly, on September 11, 2008, the district court issued an order instructing the state to set aside D'Ambrosio's aggravated-murder conviction and death sentence or retry him within 180 days.

{¶ 7} In September 2008, the state sought a retrial, which is the subject of the instant affidavit of disqualification. D'Ambrosio's retrial was assigned to Judge Synenberg, who set the matter for trial on March 2, 2009, eight days before the expiration of the federal court's conditional writ.

**{¶ 8}** On February 25, 2009, Judge Synenberg sanctioned the state for failing to comply with Crim.R. 16. Specifically, on February 20, the state discovered the existence of four items of physical evidence that had been recovered during the murder investigation but had not been provided to D'Ambrosio. The judge accepted the state's proposal that she impose the least restrictive sanction available and continue the trial to allow for forensic testing of the newly discovered evidence. Judge Synenberg thereafter rescheduled D'Ambrosio's trial for May 4, 2009.

**{¶ 9}** Because the judge's order extended the trial beyond the district court's 180-day deadline for retrying D'Ambrosio, the state returned to federal district court on March 4, 2009, to request an extension of time within which it could retry its case. On March 26, 2009, the state filed the instant affidavit of disqualification against Judge Synenberg. The state filed a copy of the affidavit of disqualification with the district court as a "supplemental authority." On April 24, 2009, the district court denied the state's motion to extend the deadline for retrying D'Ambrosio. Instead, the district court ordered that D'Ambrosio's conviction and death sentence be expunged as a remedy for the state's failure to engage in a good-faith effort to comply with the 180-day mandate. The district court, however, did not bar the state from retrying D'Ambrosio on the charges in the original indictment.

### Judge Synenberg's Alleged Representation of Keenan

**{¶ 10}** Affiants first allege that Judge Synenberg previously acted as defense counsel to Thomas Keenan, D'Ambrosio's codefendant in the murder of Klann. According to affiants, in 1993, then attorney Synenberg served as co-counsel to Keenan during his second trial. Because Keenan and D'Ambrosio were both accused of murdering Klann, affiants argue that Judge Synenberg's representation of Keenan has given her personal knowledge of disputed facts in

D'Ambrosio's case. Thus, affiants seek the judge's disqualification to avoid any conflict of interest.

{¶ 11} Affiants discovered this information on February 25, 2009, when a member of the public (who requested anonymity) alerted the lead prosecutor that Judge Synenberg was listed as an attorney of record for Keenan on the on-line docket of the Cuyahoga County clerk of courts. Prosecutors broached this subject with Judge Synenberg during a hearing on March 2, 2009, and asked the judge to formally disclose what role she had in Keenan's case and to recuse herself from D'Ambrosio's case. According to affiants, Judge Synenberg refused to acknowledge or otherwise disclose her prior representation of Keenan. Thus, affiants contend that Judge Synenberg's refusal to disclose her involvement in Keenan's trial – either before it came to the prosecutor's attention or after – constitutes a violation of the Code of Judicial Conduct.

{¶ 12} Affiants rely foremost on the clerk of courts' website, which contains on-line case and docketing information. Affiants cite specifically the attorney-information page in Keenan's case listing "Joan C. Synenberg" as an attorney of record in that case. See case No. CR-88-232189-A, 2007 WL 5581004. Affiants aver that the clerk's website "is an official record relied on by the Court in the ordinary course of its business."

{¶ 13} Affiants have also submitted affidavits of Frank C. Gasper and Mark J. Mahoney, the assistant prosecutors in Keenan's second trial. According to Gasper's affidavit, in October 1993 Joan Synenberg – then known as Joan Lehmann – appeared as co-counsel for Keenan in place of attorney Rocco Russo. Gasper recalls that he attended pretrials with attorney Lehmann in the Keenan case and also provided her with discovery materials. As for Mahoney, he states that during Keenan's second trial, defense counsel James Kersey told him that "an attractive new female lawyer would be assisting [Kersey] with the trial, and

[Kersey] mentioned the woman as being named 'Joanie.' " Mahoney also recalls seeing Judge Synenberg on at least one occasion present in the courtroom of Judge Calabrese during pretrial proceedings in Keenan's case, "sitting in front of the bar and directly behind defense counsel's trial table." Mahoney, who is the lead prosecutor in D'Ambrosio's case, explains that he did not recall until recently Judge Synenberg's involvement in Keenan's second trial due to the length of time that had elapsed since that time.

{¶ 14} Despite the judge's name appearing in Keenan's case on the clerk's website and the affidavits of Gasper and Mahoney, I cannot conclude on the record before me that Judge Synenberg acted as defense counsel in Keenan's retrial. First, the attorney-information page listing Judge Synenberg as counsel in Keenan's case contradicts affiants' assertion that the clerk's website is an official court record. The attorney page includes a disclaimer stating that "[o]nly the official court record available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current." Moreover, users of the clerk's website also "are cautioned to verify independently any information or data obtained from this Website with the official court record information maintained by the office of the Cuyahoga County Clerk of Courts."

{¶ 15} Second, Judge Synenberg's name does not appear in any official court record. That is, there is no existing docket entry, hearing transcript, trial transcript, or any other court document that lists the judge as having represented Keenan. Indeed, affiants concede that they have thoroughly read through the transcript from Keenan's retrial and confirmed that Judge Synenberg is not named or mentioned as an attorney during any on-the-record hearing.

{¶ 16} Third, according to Prosecutor Mason, neither Judge Anthony Calabrese, who presided over Keenan's retrial, nor his bailiff could recall whether Judge Synenberg appeared as counsel in Keenan's case. Likewise, Sandra McPherson, Keenan's mitigation specialist, could not recall whether Judge

Synenberg appeared. Additionally, James Kersey, Keenan's co-counsel, submitted an affidavit stating that he has no recollection of Judge Synenberg appearing in Keenan's case as counsel or as a stand-in for attorney Russo.[1] Moreover, Kersey specifically denies making the statements attributed to him in Mahoney's affidavit.

{¶ 17} Fourth, Judge Synenberg has expressly denied that she represented Keenan or appeared at any proceeding during Keenan's retrial or otherwise. She further notes that she was not qualified for death-penalty cases at the time of Keenan's retrial in 1993 and 1994. Moreover, she maintains that she never shared discovery documents with Gasper or any other assistant prosecutor in Keenan's case.

{¶ 18} To prevail on an affidavit of disqualification, an affiant must demonstrate clearly the existence of bias, prejudice, or other disqualifying interest that requires a judge's removal. See *In re Disqualification of Crow* (2000), 91 Ohio St.3d 1209, 741 N.E.2d 137. Affiants, however, have not offered the type of compelling evidence necessary to order disqualification of a judge. Based on the evidence presented by affiants, no reasonable and objective observer would harbor serious doubts about the judge's ability to preside over the case in a fair and impartial manner. See *In re Disqualification of Lewis,* 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8 (setting forth the proper test for disqualifying a judge).

### Judge Synenberg's Treatment of Prosecutors

{¶ 19} Affiants allege that Judge Synenberg's hostile treatment of the prosecutors handling this case demonstrates her inability to serve as a fair and impartial jurist. Affiants first claim that the judge denied their request for time to prepare a written response to defense counsel's motion to dismiss or for

---

1. Attorney Russo is deceased.

alternative sanctions stemming from the state's failure to provide discovery. Affiants complain because the judge ordered the hearing on the motion to go forward on February 24, 2009, despite knowing that Mahoney was already engaged in another capital murder trial before a different judge and had expected to appear only for a bond hearing rather than a hearing regarding the alleged discovery violations.

{¶ 20} An affidavit of disqualification addresses the narrow issue of possible bias or prejudice of a judge; it is not a vehicle to contest matters of substantive or procedural law. *In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4. Judge Synenberg's alleged failure to grant the prosecutors time to respond to a motion is a matter within the judge's sound discretion and is not, by itself, evidence of bias or prejudice. See *In re Disqualification of Eyster,* 105 Ohio St.3d 1246, 2004-Ohio-7350, 826 N.E.2d 304, ¶ 4. Indeed, trial judges are entitled to exercise their discretion in ruling on many matters, and it is not my role in deciding an affidavit of disqualification to second-guess each ruling. *In re Disqualification of Russo,* 110 Ohio St.3d 1208, 2005-Ohio-7146, 850 N.E.2d 713, ¶ 6.

{¶ 21} Moreover, vague or unsubstantiated allegations are insufficient to establish bias or prejudice. *In re Disqualification of Walker* (1988), 36 Ohio St.3d 606, 522 N.E.2d 460. Contrary to affiants' assertions, Judge Synenberg informed all counsel on February 23 that she would hold a hearing the next day on the recently discovered evidence in the state's possession. Thus, affiants' claim that they had expected to appear only for a bond hearing is not supported by the record. There is also no evidence that the judge denied any request for time to respond to defendant's motion to dismiss. No written request for time was filed, and no objection was made to the judge's decision to go forward with the February 24 hearing. In fact, Mahoney urged Judge Synenberg to proceed immediately with the hearing on the motion.

**{¶ 22}** Affiants next maintain that the judge berated and screamed at prosecutors during an off-the-record meeting on March 2, 2009, after they had asked the judge to recuse herself. According to Assistant Prosecutors Zimmerman and Meyer, Judge Synenberg accused them of "sandbagging" her and grandstanding for the media.

**{¶ 23}** Defense counsel Tobik and J. Michael Goldberg, the judge's staff attorney, dispute affiants' version of events, and they indicate that the judge was respectful and fair at all times. As for Judge Synenberg, she admits to being surprised and upset that the state had chosen to request her recusal in open court without having investigated the matter or first discussing it with her in chambers. She denies, however, that she treated the state's attorneys disrespectfully.

**{¶ 24}** If a judge's words or actions convey the impression that the judge has developed a "hostile feeling or spirit of ill will" or reached a "fixed anticipatory judgment" that will prevent the judge from presiding over the case with "an open state of mind * * * governed by the law and the facts," *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 469, 58 O.O. 315, 132 N.E.2d 191, then the judge should not remain on the case. Judges are, however, entitled to express dissatisfaction about attorneys' conduct and tactics inside and outside the courtroom, as long as the judge's dissatisfaction is "expressed in a way that promotes public confidence in the integrity, dignity, and impartiality of the judiciary." *In re Disqualification of Corrigan,* 105 Ohio St.3d 1243, 2004-Ohio-7354, 826 N.E.2d 302, ¶ 10. As Jud.Cond.R. 2.8(B) directs, judges should be "patient, dignified, and courteous" to parties and their lawyers, even in the most difficult of circumstances.

**{¶ 25}** Judge Synenberg was clearly taken aback by the manner in which the state sought her recusal. But those who were present during the March 2 meeting between the judge and counsel remember the conversation quite differently. On the record before me, I am unable to establish whether Judge

Synenberg actually made the alleged comments, let alone determine whether the comments reflect bias or prejudice. Thus, in the wake of the conflicting stories presented here, I cannot conclude that the judge should be removed from presiding over further proceedings. See, e.g., *In re Disqualification of Corrigan,* 105 Ohio St.3d 1243, 2004-Ohio-7354, 826 N.E.2d 302, ¶ 8.

{¶ 26} Affiants' third claim here is that during the March 2 hearing, the judge allowed defense counsel to make extended remarks about the state's alleged failure to disclose evidence and then consistently interrupted, cut off, and argued with prosecutors when they attempted to explain why defense counsel's arguments were factually and legally incorrect.

{¶ 27} I have rejected in other cases the type of concerns voiced by affiants in this case. *In re Disqualification of Solovan,* 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4 (an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law"). Moreover, after review of the March 2 hearing transcript, I am convinced that the judge conducted herself in a manner consistent with Jud.Cond.R. 2.8(B), which requires judges to be "patient, dignified, and courteous" when speaking to litigants, lawyers, and others in an official capacity. The hearing was primarily devoted to resolving discovery issues arising out of the state's belated disclosure of additional evidence. Although the judge did prevent the state from making certain arguments, this was done only as to matters that the court had previously addressed. Certainly, judges have wide discretion in how they conduct courtroom proceedings, and nothing about Judge Synenberg's conduct raises serious questions for me about her ability to set aside any frustration with the state's attorneys and preside fairly over further proceedings.

### Cleveland Plain Dealer Article

{¶ 28} Finally, affiants allege that Judge Synenberg was a source for an extremely inaccurate and scathing February 27, 2009 newspaper column that

accused prosecutors of hiding evidence and called for ending the "charade called justice." According to affiants, the judge inappropriately provided a journal entry to a columnist for the Cleveland Plain Dealer before the entry was filed with the clerk of courts. In addition to the entry, affiants claim that Judge Synenberg made direct comments to the columnist about the substance of the case in violation of the Code of Judicial Conduct.

{¶ 29} Judge Synenberg admits that she provided a newspaper columnist with a journal entry before the entry was filed with the clerk. The subject of this entry was the judge's decision to continue the trial as a sanction for the state's discovery violations. The judge's decision to provide the media with a copy of her entry before counsel had received the entry was ill-advised. Nevertheless, I do not find that the judge's action requires her disqualification. Judge Synenberg informed both parties in open court on February 25, 2009, of her decision to continue the trial. Moreover, contrary to affiants' claims, there is no compelling evidence that the judge made any direct comment about the substance of the case to the columnist. Judge Synenberg avers that she referred the columnist to the transcripts, journal entries, and orders, but did not otherwise discuss the case, and I see nothing before me that would lead me to question the judge on this matter.

### Conclusion

{¶ 30} As I have stated, "[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.

{¶ 31} For the reasons stated above, the affidavit of disqualification is denied. The case may proceed before Judge Synenberg.

_____