**IN RE DISQUALIFICATION OF CAPPER.**

**HERIER *v*. HERIER.**

**[Cite as *In re Disqualification of Capper,* 134 Ohio St.3d 1271,**

**2012-Ohio-6287.]**

*Judges—Affidavit of disqualification—Disqualification denied.*

(No. 12-AP-077—Decided August 3, 2012.)

ON AFFIDAVIT OF DISQUALIFICATION in Clark County Court of Common Pleas,

Domestic Relations Division, Case No. 00-DR-0023.

_____

**O'CONNOR, C.J.**

{¶ 1} Plaintiff Melinda E. Polen has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Thomas J. Capper from presiding over any further proceedings in case No. 00-DR-0023, now pending in the Domestic Relations Division of the Court of Common Pleas of Clark County.

{¶ 2} Polen claims that Judge Capper should be disqualified based on the following six allegations: (1) Judge Capper favors defendant David Herier, (2) Judge Capper has a "pre-existing bias" toward Herier's attorney, Douglas Geyer, (3) Judge Capper has "preconceived notions about critical elements of the case," (4) Judge Capper failed to disclose a 1999 personal real-estate transaction involving Herier, (5) Judge Capper independently investigated Polen's "civil rights advocate," and (6) there are various disciplinary matters pending against individuals related to the underlying litigation that create an appearance of impropriety.

{¶ 3} Judge Capper has responded in writing to the concerns raised in the affidavit, offering a detailed account of the underlying proceeding and

responding to each of Polen's allegations. Judge Capper denies that he is biased or prejudiced against Polen.

{¶ 4} For the reasons explained below, no basis has been established for ordering the disqualification of Judge Capper.

### Background of the Underlying Case

{¶ 5} In 2000, the parties in the underlying case were granted a divorce. Since that time, the parties have repeatedly sought modification of parental rights and responsibilities for their minor child. By 2010, Herier was designated as the sole legal custodian of the child, and Polen was granted visitation and parenting time.

{¶ 6} At a March 23, 2011 hearing, Polen submitted a filing by Kimberley Bukstein, whom Polen describes as her "civil rights advocate." Bukstein is not an attorney licensed in Ohio. Bukstein also attempted to sit at counsel table with Polen. Judge Capper reported Bukstein's conduct to the secretary of the Board on the Unauthorized Practice of Law. In May 2012, disciplinary counsel filed a complaint against Bukstein before the board, based partially on Bukstein's involvement with Polen's case.

{¶ 7} In March 2012, Polen filed a motion for custody, and Herier filed a motion to suspend Polen's visitation rights. Judge Capper conducted an in-camera interview with the child, which resulted in a March 21 entry that, among other things, prohibited Polen from allowing any contact between the child and Bukstein, prohibited both parties from discussing any facts relating to the litigation with the child, and scheduled a final hearing on the pending motions for June 28, 2012. According to Judge Capper, Polen subsequently violated the court's order by discussing the litigation with the child. By entry of May 29, Judge Capper suspended Polen's parenting time and granted her only supervised visits.

**{¶ 8}** At some point thereafter, Judge Capper learned that Polen and Bukstein had filed attorney-disciplinary complaints against Herier, attorney Geyer, Judge Capper, and the court-appointed guardian ad litem. By entry of June 13, Judge Capper dispensed with the scheduled June 28 custody hearing, explaining that Polen's disciplinary complaints should first be resolved. On July 5, Polen filed this affidavit of disqualification.

**Waiver**

**{¶ 9}** Two of Polen's allegations are untimely and therefore waived. "An affidavit of disqualification must be filed as soon as possible after the incident giving rise to the claim of bias or prejudice occurred or affiant becomes aware of circumstances that support disqualification. A party may be considered to have waived its objection to the judge when the objection is not raised in a timely fashion and the facts underlying the objection have been known to the party for some time." *In re Disqualification of O'Grady*, 77 Ohio St.3d 1240, 1241, 674 N.E.2d 353 (1996). This is especially true after lengthy proceedings have taken place. *In re Disqualification of Light*, 36 Ohio St.3d 604, 604, 522 N.E.2d 458 (1988). Here, Polen has waived the right to object to Judge Capper's participation based on his alleged relationship with Geyer and the 1999 real-estate transaction.

**{¶ 10}** According to Polen, Geyer is a former Clark County judge and current candidate for county commissioner. Because of Geyer's position in the community, Polen claims that he and Judge Capper are part of a "good ol' boys network" that has prejudiced Polen's ability to find and retain counsel. The record demonstrates, however, that Judge Capper succeeded Geyer on the bench in 1998, and Geyer has represented Herier for most of this 12-year litigation. Thus, Polen has been aware of this alleged prejudicial relationship for many years. Similarly, the record shows that Polen knew about Geyer's candidacy for county commissioner in January 2012, but she waited six months to raise the issue

in her July 2012 affidavit of disqualification. If Polen believed that the relationship demonstrated bias or prejudice, she should have timely sought Judge Capper's disqualification. Because nothing in the record justifies the delay in filing an affidavit on this ground, Polen has waived any objection to Judge Capper based on his relationship with Geyer.

{¶ 11} Polen also claims that Judge Capper should be disqualified because defendant Herier, in his capacity as a real-estate attorney, worked on a closing involving Judge Capper's property in 1999. Polen asserts that the "matter took place only months before the initial filings in this case," but she has not attempted to explain when she learned of the 1999 transaction. In affidavit-of-disqualification proceedings, the burden falls on the affiant to submit sufficient evidence demonstrating that disqualification is warranted. *See* R.C. 2701.03(B)(1) (requiring an affiant to include specific allegations of bias, prejudice, or disqualifying interest and the facts to support those allegations). Polen had the burden to demonstrate that this allegation relating to a 1999 transaction is timely, but she has failed to provide any such argument or explanation. Accordingly, Polen has waived the right to assert these two allegations.

### Merits of the Affidavit of Disqualification

{¶ 12} Turning to the merits of Polen's four remaining allegations, it is important to first note that "absent extraordinary circumstances, a judge will not be subject to disqualification after having presided over lengthy proceedings in a pending case." *In re Disqualification of Celebrezze*, 94 Ohio St.3d 1228, 1229, 763 N.E.2d 598 (2001). According to Judge Capper, he has presided over every hearing in this 12-year litigation, and he has conducted over 15 in-camera interviews of the parties' minor child. Through this process, Judge Capper believes he has "gained this child's trust" and has a "very workable relationship" with him. Given these facts, disqualification is warranted only under

4

"extraordinary circumstances," which, as explained below, Polen has failed to establish.

### Judge Capper's alleged "favoritism" towards Herier

{¶ 13} Polen alleges that Judge Capper favors Herier because he consistently rules on Herier's motions but either summarily dismisses Polen's motions or allows them to languish. Polen also quotes a portion from a May 10, 2012 hearing transcript, in which she claims that Judge Capper denied her the opportunity to testify.

{¶ 14} The matters complained of here fall within the sound discretion of the trial court, and it is not the chief justice's role in deciding an affidavit of disqualification to second-guess such matters. *In re Disqualification of Synenberg*, 127 Ohio St.3d 1220, 2009-Ohio-7206, 937 N.E.2d 1011, ¶ 20. Thus, Polen's disagreement or dissatisfaction with Judge Capper's legal rulings, even if those rulings may be erroneous, is not grounds for disqualification. *In re Disqualification of Floyd*, 101 Ohio St.3d 1217, 2003-Ohio-7351, 803 N.E.2d 818, ¶ 4. Similarly, Judge Capper's alleged failure to promptly rule on Polen's motions does not constitute bias or prejudice. *In re Disqualification of Eyster*, 105 Ohio St.3d 1246, 2004-Ohio-7350, 826 N.E.2d 304, ¶ 4 (a judge's action—or inaction—on a motion is within the judge's sound discretion and is not evidence of bias or prejudice).

{¶ 15} In addition, a review of the May 10 hearing transcript demonstrates that Judge Capper did, in fact, allow Polen to testify. While Judge Capper eventually denied Polen's request to continue speaking, there is nothing in the transcript to suggest that Judge Capper's conduct at the hearing was a result of bias or favoritism towards Herier.

***Judge Capper's alleged "preconceived notions" about the case***

{¶ 16} Polen next asserts that Judge Capper's May 29 entry demonstrates that he has predetermined the outcome of the upcoming custody hearing. The complained-of paragraph states, in full:

> This Court notes that throughout the pendency of this matter, there has been an on-going issue concerning the Plaintiff's discussion of the issues of this case with the minor child herein, despite this Court's Orders to the contrary. In fact, in this Court's Entry filed March 21, 2012, the Court prohibited both parties from discussing or permitting third persons to discuss with the minor child herein any facts relating to the pending litigation. It is clear that the Plaintiff has chosen to disregard this Court's Order relating to this issue and it is unlikely that she will follow this Court's Orders relating to this issue in the immediate future.

{¶ 17} Polen's allegation here is meritless. If a judge's words convey the impression that the judge has "reached a 'fixed anticipatory judgment' that will prevent the judge from presiding over the case with 'an open state of mind," then the judge should not remain on the case. *In re Disqualification of Synenberg*, 127 Ohio St.3d 1220, 2009-Ohio-7206, 937 N.E.2d 1011, ¶ 24, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469, 132 N.E.2d 191 (1956). The above-quoted paragraph does not suggest any fixed judgment about the ultimate custody issue; the paragraph merely explains why Judge Capper limited Polen's parenting time to supervised visits. Nothing in the record, including the May 29 entry, raises a serious question about Judge Capper's ability to preside fairly and impartially over further proceedings.

6

*Judge Capper's alleged "investigative behavior"*

{¶ 18} Polen next claims that Judge Capper has engaged in "investigative behavior" in relation to Bukstein, which she believes violates Jud.Cond.R. 2.9(C). Judge Capper admits that he investigated Bukstein's background, but he further states that Bukstein is "providing extremely poor legal advise [sic] to persons who are susceptible to her influence" and Polen is one of Bukstein's "victims." In Judge Capper's opinion, Bukstein is a "very dangerous person."

{¶ 19} As an initial matter, affidavit-of-disqualification proceedings are not the appropriate mechanism for determining whether a judge has followed the Code of Judicial Conduct. *In re Disqualification of Griffin*, 101 Ohio St.3d 1219, 2003-Ohio-7356, 803 N.E.2d 820, ¶ 8. The issue here is a narrow one: "whether a judge in a pending case has a bias, prejudice, or other disqualifying interest that mandates the judge's disqualification from that case." *Id.* at ¶ 9.

{¶ 20} To that end, Polen has not proven how Judge Capper's investigative conduct equates to bias or prejudice against her. "The term 'bias or prejudice' implies a hostile feeling or spirit of ill-will * * * with the formation of a fixed anticipatory judgment on the part of the judge * * *." *In re Disqualification of O'Neill*, 100 Ohio St.3d 1232, 2002-Ohio-7479, 798 N.E.2d 17, ¶ 14. Judge Capper explains that he researched Bukstein's background because he believed she was providing legal advice to a party in his courtroom and because Bukstein was becoming involved with the minor child. His actions do not imply any "hostile feeling or spirit of ill-will" towards Polen. If anything, it appears that Judge Capper followed what he believed to be his professional and statutory responsibilities.

{¶ 21} Moreover, Judge Capper's alleged hostility toward Bukstein—or, as Polen alleges, his "fixation" about her—is not grounds for disqualification. R.C. 2701.03 authorizes judicial disqualification based on alleged bias or

prejudice against a "party" or a "party's counsel." Bukstein is neither party nor counsel. Polen's allegation here is not well taken.

### *Ethical complaints*

**{¶ 22}** Polen also asserts that the "disciplinary concerns in this case" require disqualification. The law is clear, however, that "a judge is not automatically disqualified solely because a party in a case pending before him or her has filed a complaint against the judge with Disciplinary Counsel or a similar body." *In re Disqualification of Kilpatrick*, 47 Ohio St.3d 605, 606, 546 N.E.2d 929 (1989). To hold otherwise would invite the filing of misconduct complaints solely to obtain a judge's disqualification. *Id.*

**{¶ 23}** Polen cites *In re Disqualification of Maschari*, 88 Ohio St.3d 1212, 723 N.E.2d 1101 (1999), and *In re Disqualification of O'Neill*, 100 Ohio St.3d 1228, 2002-Ohio-7477, 798 N.E.2d 13, for the position that pending disciplinary complaints create an appearance of impropriety. But those cases do not control here. In *Maschari*, a combination of factors led to disqualification, including the fact that the affiant was the judge's election opponent, which led to the two grievances filed against the judge. *Maschari* at 1213. In *O'Neill*, a similar "unique combination of factors" required disqualification, including the fact that the judge was an actual respondent in a formal disciplinary complaint, the affiant's allegations were the basis of the formal complaint, and the judge's response to the complaint made specific "derogatory accusations against the affiant." *O'Neill* at ¶ 5, 7. Here, Polen alleges only that she and Bukstein have filed "unresolved complaints" with the Dayton Bar Association. Unlike in *Maschari* or *O'Neill*, there is no indication from the record that Judge Capper is the respondent in any formal disciplinary proceeding. Further, Polen has not shown the existence of any similar "unique combination of factors" warranting disqualification.

**{¶ 24}** Finally, Judge Capper's referral of Bukstein to the Board on the Unauthorized Practice of Law does not require disqualification.  It is well settled that a judge's cooperation in an investigation of the ethical misconduct of an attorney appearing before him does not automatically lead to the judge's disqualification.  *In re Disqualification of Maloney*, 88 Ohio St.3d 1215, 723 N.E.2d 1102 (1999).  That same rationale applies here:  a judge's cooperation in an investigation of the alleged misconduct of a nonattorney "advocate" appearing before him does not automatically lead to disqualification.  Further, no appearance of impropriety exists.  " 'The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one.  A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality.' "  *In re Disqualification of Lucci*, 117 Ohio St.3d 1242, 2006-Ohio-7230, 884 N.E.2d 1093, ¶ 8, quoting *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8.  No reasonable and objective observer would question Judge Capper's impartiality because he had reported Bukstein's conduct to the appropriate authorities.

**{¶ 25}** Despite the various disciplinary complaints, Judge Capper states that he is ready to conduct the final hearing "with an open mind," and no evidence in the record calls his assurances into doubt.

### Conclusion

**{¶ 26}** The disqualification of a judge is an extraordinary remedy.  *In re Disqualification of O'Neill*, 100 Ohio St.3d 1232, 2002-Ohio-7479, 798 N.E.2d 17, ¶ 15, citing *In re Disqualification of Hunter*, 36 Ohio St.3d 607, 522 N.E.2d 461 (1988).  "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions."  *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-

Ohio-5489, 798 N.E.2d 23, ¶ 5. Polen has not demonstrated that there are extraordinary circumstances that warrant Judge Capper's disqualification.

{¶ 27} For the reasons stated above, the affidavit of disqualification is denied. The case may proceed before Judge Capper.

———————————————