IN RE DISQUALIFICATION OF BURGE.

[Cite as *In re Disqualification of Burge*,
142 Ohio St.3d 57, 2014-Ohio-5871.]

(No. 14–AP–040—Decided July 8, 2014.)

O'CONNOR, C.J.

{¶ 1} Dennis P. Will, the Lorain County prosecuting attorney, has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge James M. Burge from all matters in which Will or one of his assistant prosecutors appears as counsel of record. This would currently include 276 pending criminal cases and four civil matters. This is the sixth affidavit of disqualification that Will has filed or approved for filing against Judge Burge. One of Will's previous disqualification requests was granted; one was granted in part and denied in part; one was denied; and in the two other disqualification matters, Judge Burge voluntarily recused himself before the request was decided. *See* case Nos. 08–AP–057, 09–AP–106, 13–AP–027, 13–AP–065, and 14–AP–010. In his current 68–page affidavit, Will sets forth an assortment of allegations to support his position that Judge Burge is biased and prejudiced against the prosecutor's office and has violated various rules of the Code of Judicial Conduct.

{¶ 2} Judge Burge has responded in writing to the allegations, denying any bias against Will and his assistant prosecutors. In addition to Will's initial affidavit and the judge's response, Will and Judge Burge have also submitted

supplemental filings, and several members of the Lorain County bar, including assistant prosecutors and local defense attorneys, have submitted affidavits as well.

{¶ 3} For the reasons explained below, Will has not established that he is entitled to the extraordinary relief requested in his affidavit.

## Scope of affidavit-of-disqualification proceedings

{¶ 4} Much of Will's affidavit is devoted to proving that Judge Burge has violated the Code of Judicial Conduct. However, the issue before the chief justice in disqualification proceedings is a narrow one: "[t]he constitutional and statutory responsibility of the Chief Justice in ruling on an affidavit of disqualification is limited to determining whether a judge in a pending case has a bias, prejudice, or other disqualifying interest that mandates the judge's disqualification from that case." *In re Disqualification of Kate*, 88 Ohio St.3d 1208, 1209–1210, 723 N.E.2d 1098 (1999). *See also In re Disqualification of Sutula*, 105 Ohio St.3d 1237, 2004-Ohio-7351, 826 N.E.2d 297, ¶ 5 (the chief justice's "review of an affidavit of disqualification focuses not simply on the level of civility shown by judges and lawyers to each other, however, but rather more broadly on the judge's willingness and ability to serve fairly and impartially on a particular case"). Thus, affidavit-of-disqualification proceedings are "not the appropriate mechanism for determining whether a judge has followed the Code of Judicial Conduct." *In re Disqualification of Capper*, 134 Ohio St.3d 1271, 2012-Ohio-6287, 984 N.E.2d 1082, ¶ 19. Judicial-misconduct complaints are heard by the Board of Commissioners on Grievances and Discipline and ultimately decided by the full court.

{¶ 5} Moreover, many of Will's alleged judicial-rule violations are irrelevant to the issue whether Judge Burge is biased against the prosecutor's office. For example, Will claims that Judge Burge has used profanity during court proceedings; he has communicated with defendants using racially derogatory terms, such as "cracker" and "homeboy"; he has given preferential treatment to certain defense attorneys over other defense counsel; during the 2008 presidential election, he made sexually degrading comments about Hillary Clinton and racially harassed her supporters; he once threatened to "choke" a defendant; he has made inappropriate comments about other Lorain County judges; he has misused his position as administrative judge by attempting to block vacation- and sick-time payouts to former employees of the court; he has retaliated against other public officials, including judges, for their refusal to hire his wife; and he has been known to improperly "shake down" attorneys for campaign contributions.

{¶ 6} Because these allegations of judicial misconduct do not support a conclusion that Judge Burge is biased against the prosecutor's office, they are

outside the scope of this proceeding. Accordingly, only Will's specific bias allegations involving either himself or an assistant prosecutor will be addressed in this entry.

## Waiver

{¶ 7} An affidavit of disqualification must be filed "as soon as possible after the incident giving rise to the claim of bias and prejudice occurred," and failure to do so may result in waiver of the objection, especially when "the facts underlying the objection have been known to the party for some time." *In re Disqualification of O'Grady,* 77 Ohio St.3d 1240, 1241, 674 N.E.2d 353 (1996). And in affidavit-of-disqualification proceedings, "the affiant has the burden to demonstrate that the affidavit is timely filed." *In re Disqualification of Carr,* 138 Ohio St.3d 1237, 2013-Ohio-5927, 5 N.E.3d 1278, ¶ 4.

{¶ 8} Here, Will claims that Judge Burge has made various prejudicial comments to and about his assistant prosecutors. But many of the judge's alleged comments were made years ago, and Will offers no reason for presenting them now. For example, Will claims that in 2008, Judge Burge attempted to intimidate assistant prosecutor Richard Gronsky and called another former assistant prosecutor a liar. And Will claims that in 2010, Judge Burge made derogatory and inappropriate comments to assistant prosecutor Christopher Pierre about another assistant prosecutor and Pierre's supervisors. Will also asserts that during one criminal trial, assistant prosecutor Nick Hanek made an objection, to which Judge Burge responded by becoming visibly upset, slamming his fists on the bench, and scowling at Hanek. Yet Will offers no time frame for the judge's alleged prejudicial conduct towards Hanek. If Will believed that the judge's comments and conduct from years ago reflected bias against his office, he should have timely sought disqualification. Accordingly, Will waived the right to object to these alleged comments occurring years ago that Will failed to identify when he learned of the conduct.

## Merits of the affidavit of disqualification

### *Applicable precedent and the standard for disqualification*

{¶ 9} "The statutory right to seek disqualification of a judge is an extraordinary remedy." *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. The relief requested by Will, however, differs from most disqualification requests. Will's affidavit does not involve one underlying case; instead, he requests the disqualification of a duly elected judge from his *entire* criminal docket *and* those civil cases in which the prosecutor is required by law to represent a party. As precedent confirms, Will has a heavy burden to show he is entitled to such extraordinary relief.

{¶ 10} Prosecutors have sought similar relief in at least two previous disqualification matters. In *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 657 N.E.2d 1361 (1994), the Jefferson County prosecuting attorney alleged that Judge Dominick E. Olivito had made disparaging public comments about the prosecutor and his assistants, among other allegations. *Id.* at 1262. The chief justice first noted that the standard for disqualification must be necessarily high where the relief requested involves removal of the judge from his entire criminal docket. *Id.* at 1263. Notwithstanding Judge Olivito's "rather egregious" public comments about the prosecutor, the chief justice denied the affidavit because Judge Olivito's feelings towards the prosecutor had not "manifested themselves in [the judge's] official duties to the extent that his disqualification from all criminal cases [was] warranted." *Id.* That is, despite Judge Olivito's "unworthy" language, the citizens of Jefferson County were not being deprived of their right to the fair and impartial administration of justice. *Id.*

{¶ 11} The chief justice denied a similar affidavit brought by the Adams County prosecuting attorney against Judge Elmer Spencer in *In re Disqualification of Spencer*, case No. 94–AP–179 (Dec. 23, 1994). That prosecutor complained about Judge Spencer's disparaging comments about the prosecutor's office and the judge's pervasive use of profanity, among other allegations. The chief justice again noted that the standard for a blanket order of disqualification from all criminal cases "must necessarily be high." On the merits, the chief justice found that Judge Spencer's public comments about the prosecutor and his assistants were "regrettable" but that the comments had not "materially impact[ed] the fair administration of justice in Adams County." Similarly, Judge Spencer's pervasive use of profanity was "personally distasteful" to the chief justice, but there was insufficient evidence to conclude that the profanity affected "the judge's official duties or illustrate[d] bias or prejudice to the prosecutor's office that require[d] disqualification."

{¶ 12} Consistent with *Olivito* and *Spencer*, the standard for disqualification of Judge Burge must necessarily be high. In order for Judge Burge to be removed from all cases involving the prosecutor's office, Will must demonstrate that Judge Burge has illustrated bias toward Will that manifests itself in the judge's official duties, thereby materially impacting the fair and impartial administration of justice in Lorain County. Will has not met his burden.

### Alleged physically threatening behavior

{¶ 13} Will first claims that his employees "are in fear for their physical safety in Burge's courtroom." As support, Will recites two recent incidents between assistant prosecutor Jennifer Riedthaler and Judge Burge. First, Will claims that in March 2014, Judge Burge yelled at Riedthaler in his chambers for making

him "look bad in the newspaper." According to Will, Judge Burge's "tone was extremely angry," and the judge was gripping the handles of his chair "as if to restrain himself." At one point, Judge Burge recalled a fact that he had apparently forgotten, and the judge "proceeded to slam his head against the wall." Riedthaler believed that Judge Burge might throw his chair, but instead he "angrily slammed the chair back down and walked into the hallway."

{¶ 14} The second incident occurred in May 2014. Riedthaler was waiting in Judge Burge's courtroom at counsel table with a police detective. Before proceedings began, Judge Burge entered the room and announced that he felt "shitty." After Riedthaler asked the judge what was wrong, he "proceeded to walk over and position himself directly across the trial table" from her. He then "slammed his hands down on the table, shoulder-width apart, leaned over to APA Riedthaler and sternly said, 'You will know in about two minutes. I don't want to yell at you in front of everyone.'" Judge Burge then moved behind Riedthaler "and began pacing back and forth." Riedthaler felt upset and frightened, but the judge never told her what was wrong. Instead, the judge indicated that he was "over it," while grinning. Based on these two incidents, Will claims that Riedthaler "can no longer complete her functions in Judge Burge's courtroom," his "employees are in fear for their physical safety," and he is forced to staff Judge Burge's courtroom with two assistant prosecutors.

{¶ 15} For his part, Judge Burge states that he was upset with Riedthaler during the May 2014 incident because she belatedly changed her position on an issue. However, Judge Burge denies threatening her or any other attorney. Jenifer Berki, a local defense attorney, also submitted an affidavit in support of Judge Burge. Berki claims that she was present for the recent allegation of Judge Burge threatening a prosecutor, and Berki avers that she did not feel that she was in a threatening environment at that time.

{¶ 16} A video of the May 2014 incident has been submitted. The video image is grainy and does not have sound, but it shows Judge Burge with his hands on counsel table leaning towards Riedthaler, who is seated at the table with other people. After about a minute, Judge Burge moved behind Riedthaler and appeared to lean against the railing between counsel table and the galley. The judge stayed there for about six minutes while Riedthaler appeared to converse with others in the courtroom, and at one point, Riedthaler moved to retrieve something from another area in the courtroom. Judge Burge then left the room. Contrary to Will's affidavit, the video does not show Judge Burge "pac[ing] back and forth" behind Riedthaler.

{¶ 17} Riedthaler may have reasonably felt intimidated by some of Judge Burge's alleged actions, such as yelling at her, slamming his head against a wall, or slamming his chair down. But these two incidents alone do not necessarily

show that Judge Burge has threatened Will's employees with physical harm. Nor do the two incidents illustrate a bias against the prosecutor's office. That is, Will has not established that Judge Burge intimidated Riedthaler *because* she worked for Will. The judge's conduct could have been caused by his intemperate nature. But the issue here is bias, and these two incidents alone do not prove that Judge Burge has a bias against the prosecutor's office warranting the extraordinary relief requested by Will in his affidavit.

### Judge Burge's string of letters to Will

{¶ 18} Will next claims that after Judge Burge's "threatening actions" toward Riedthaler, Will met with two other Lorain County common pleas court judges and requested that the general division judges remove Judge Burge as administrative judge and strip him of his criminal docket. Will claims that after Judge Burge learned of these meetings, the judge sent Will eight unsolicited letters over five business days. Will claims that these letters "reflect the depths of the hatred and animosity that Burge holds against" Will and his office.

{¶ 19} Judge Burge's letters cover a variety of topics, and they definitely demonstrate a deteriorated relationship between the two public officials, as both sides feel that the other has made threatening comments. Nonetheless, the letters do not prove that Judge Burge cannot be fair and impartial in any matter involving an assistant prosecutor, nor do the letters show that Judge Burge's differences with Will have affected the judge's official duties.

### Sexual harassment

{¶ 20} Will claims that there are "numerous instances" when his female employees have "felt that Judge Burge has committed sexual harassment." Will identifies two assistant prosecutors who have been subjected to this alleged harassment: Donna Freeman and Sherry Glass.

{¶ 21} As for Freeman, Will claims that Judge Burge expressed a "professionally inappropriate interest" in her, but Will did not further elaborate on this allegation. In response, Judge Burge claims that he recently offered Freeman the position as his bailiff, which she declined, but he is unaware of any other interest that he has shown in her that could have given rise to a belief that his concern for her was other than as a lawyer and new mother. Without more from Will, this vague allegation is insufficient to constitute bias or prejudice, let alone to prove that Judge Burge sexually harassed Freeman. *See, e.g., In re Disqualification of Walker,* 36 Ohio St.3d 606, 522 N.E.2d 460 (1988) ("vague, unsubstantiated allegations of the affidavit are insufficient on their face for a finding of bias or prejudice").

{¶ 22} As for assistant prosecutor Glass, Will claims that Glass has been subjected to "many embarrassing and demeaning comments about her appear-

ance, as well as sexual references." For example, Will claims that Judge Burge has referred to Glass as a "blond bombshell" and a "looker." In addition, Will claims that Judge Burge has mocked Glass by repeating what she says in a soft, exaggerated, feminine voice. Will further claims that during one September 2012 hearing, Glass asked to approach the bench with defense attorney Andy Robinson. Judge Burge commented on Glass's "librarian look" and "indicated that if she took off her glasses and let down her hair, 'Wow, what I would do to you.' " Glass was flustered and embarrassed by these degrading comments, which were allegedly loud enough to be heard by the entire courtroom. Will claims that he was just made aware of the judge's inappropriate comments to Glass while preparing this affidavit of disqualification.

{¶ 23} Several people have submitted affidavits regarding the September 2012 hearing. Glass submitted an affidavit attesting to the truth of Will's allegations. In addition, Amanda Thomas, a paralegal in Will's office, submitted an affidavit averring that she also heard the judge's inappropriate comments to Glass. However, Andrew Robinson, the defense attorney named in Will's affidavit as witnessing the inappropriate comments, submitted an affidavit averring that he had no recollection of the judge making such comments to Glass, and if Robinson had heard the comments, he claims that he would have remembered them. In addition, the court reporter for that hearing averred in her affidavit that she did not recall Judge Burge saying anything inappropriate to Glass.

{¶ 24} For his part, Judge Burge acknowledges occasionally commenting on Glass's appearance and referring to her as a "blond bombshell," which he claims was meant to characterize Glass as an aggressive prosecutor. Judge Burge does not recall making any statements similar to the remarks attributed to him at the September 2012 hearing.

{¶ 25} Judge Burge should not be commenting on the appearance of attorneys or referring to any individuals in his courtroom as "blond bombshells." Such comments are undignified, unprofessional, and offensive. However, the record otherwise contains conflicting evidence regarding the September 2012 hearing. If Judge Burge made the alleged comments to Glass, his behavior is indefensible. Nevertheless, the issue here is not whether Judge Burge should be disciplined for making sexually inappropriate comments. The issue is whether Judge Burge has a bias against Will's office and whether that bias has materially affected the judge's official duties so that he must be removed from any case involving an assistant prosecutor. Based on this record, Will has not established that the judge's behavior toward Glass is a product of bias toward Will or that it reflects bias against Will and his office.

### Disparaging comments

{¶ 26} Will also claims that Judge Burge has made disparaging comments about Will and his management team. Many of these comments were allegedly

made by Judge Burge to his former bailiff, who had a falling-out with Judge Burge and now works for Will. Vulgar and offensive language about other public officials—whether made on the bench, in public, or in chambers—is inconsistent with proper judicial demeanor and decorum. Given some of the comments attributed to Judge Burge in Will's affidavit, Will's concerns are understandable. However, as in *Olivito* and *Spencer*, regardless of whether the judge's comments reflect his personal feelings toward Will, there is insufficient evidence to conclude that the judge's feelings have "manifested themselves in his official duties to the extent that his disqualification from all criminal cases is warranted." *Olivito*, 74 Ohio St.3d at 1263, 657 N.E.2d 1361.

### Professionalism

{¶ 27} Tension between a judge and a county prosecutor is bound to occur in our adversary system. Both sides seek to attain justice, but they do not always agree on what that means. However, principles of professionalism require judges and prosecutors to give proper respect to each other and to treat each other with the dignity and courtesy that each office deserves. The relationship between Will and Judge Burge has reached an unprofessional level and is less than the public deserves from these two veteran lawyers. Both parties must work to improve their professional relationship. The citizens of Lorain County deserve a civil working relationship between the prosecutor's office and the administrative judge of the common pleas court.

{¶ 28} Finally, although Will's affidavit is being denied at this time, many of the allegations raised in his affidavit—especially those regarding Judge Burge's generally offensive language and conduct—are a cause for concern. Judge Burge is reminded of the "Judicial Creed," which the Supreme Court of Ohio adopted in 2001 in recognition of the unique standards of professionalism required of judges. Three provisions of that creed bear repeating:

I believe that my role requires scholarship, diligence, personal integrity and a dedication to the attainment of justice.

\* \* \*

I recognize that the dignity of my office requires the highest level of judicial demeanor.

\* \* \*

I will treat all persons, including litigants, lawyers, witnesses, jurors, judicial colleagues and court staff with dignity and courtesy and insist that others do likewise.

## Conclusion

{¶ 29} For the reasons stated above, the affidavit of disqualification is denied. The visiting-judge assignment relating to Will's affidavit of disqualification is withdrawn, and Judge Burge may commence hearing cases assigned to him in which the Lorain County Prosecuting Attorney's Office appears as counsel of record.