[Cite as *Dibert v. Carpenter*, 2017-Ohio-689.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| GERALD DIBERT | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2015-CA-18 |
| | : | |
| v. | : | T.C. NO. 08CV01 |
| | : | |
| CYNTHIA SUE CARPENTER, | : | (Civil Appeal from Common Pleas |
| TRUSTEE, et al. | : | Court, Probate Division) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the _____24th_____ day of _____February_____, 2017.

. . . . . . . . . . .

QUENTIN M. DERRYBERRY, II, Atty. Reg. No. 0024106, 15 Willipie Street, #220, P. O. Box 2056, Wapakoneta, Ohio 45895
    Attorney for Plaintiff-Appellant

STANLEY R. EVANS, Atty. Reg. No. 0011933, P. O. Box 499, Sidney, Ohio 45365
    Attorney for Defendant-Appellee

DAVID R. WATKINS, Atty. Reg. No. 0013126, 1111 Rush Avenue, P. O. Box 68, Bellefontaine, Ohio 43311
    Attorney for Appellee Howard A. Traul II, Special Fiduciary

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** This litigation involves two trusts: a trust created by the parties' grandfather, Gerald Pickering ("the Pickering Trust"), and a trust created by the parties' father, Kenneth Dibert ("the Dibert Trust"). Gerald Dibert ("Gerald")[1] sued his sister, Cynthia Carpenter ("Cynthia"), for conduct related to the Pickering Trust. Cynthia counterclaimed, originally raising three claims related to the Pickering Trust and one related to the Dibert Trust. Cynthia later filed an amended pleading, raising 13 counterclaims related solely to the Dibert Trust.

**{¶ 2}** Gerald appeals from two judgments of the Champaign County Court of Common Pleas, Domestic Relations/Juvenile/Probate Division. The first judgment, dated May 7, 2015, found in favor of Cynthia on four of her counterclaims against Gerald and awarded judgment totaling $287,786.32 to the Dibert Trust trustee. The second judgment, which was issued on July 29, 2015, after a limited remand from this court, granted attorney fees of $105,127 and deposition costs of $719.50 to Cynthia.

**{¶ 3}** For the following reasons, the trial court's judgments will be affirmed.

## I. Factual and Procedural History

**{¶ 4}** This litigation began in 2007, and its history is complex. Although the parties settled Gerald's claims against Cynthia and this appeal involves only the trial court's judgments on Cynthia's counterclaims, it is helpful to review relevant portions of the entire history of this litigation.

---

[1] Some of the documents filed in the trial court refer to the parties as Gary and Cyndi, which are apparently their nicknames. Although we refer to the parties by their first names to avoid confusion with other family members, we will use their given names.

{¶ 5} The parties, Gerald and Cynthia, are siblings. In 1975, their grandfather, Gerald Pickering, conveyed four parcels of land, totaling approximately 570 acres, to the parties' parents, Joycelyn (nee Pickering) and Kenneth Dibert; Pickering retained a life estate in the property. In 1980, Pickering sold his life estate interest to Kenneth and Joycelyn in exchange for a note, secured by a mortgage, for $271,671.33.

{¶ 6} A month later, Pickering established the Pickering Trust and assigned the note and mortgage to the trust. Pursuant to the terms of the trust and an amendment to the trust, the income from the trust was designated to go to Pickering's second wife, Lucille (the parties' step-grandmother), upon Pickering's death. When Lucille died, the trust designated Joycelyn and Kenneth Dibert as the income beneficiaries. When both Lucille and the Diberts died, the trust corpus was to be distributed to Pickering's grandchildren, Gerald and Cynthia. Pickering died in 1981 and, at that point, Lucille was the life income beneficiary of the Pickering Trust.

{¶ 7} Joycelyn Dibert, the parties' mother, died in 1989, and Kenneth Dibert remarried. In 1991, Kenneth created the Dibert Trust into which he placed the property conveyed by Pickering; no payments had been made on the note held by the Pickering Trust, and the property was still subject to a mortgage.

{¶ 8} According to the terms of the Dibert Trust, Kenneth was designated as income beneficiary during his lifetime, and his second wife, Amelia Jane ("Jane"), was to be designated as income beneficiary upon his death. Upon Jane's death, Gerald and Cynthia were to share equally in the trust. The Dibert trust also contained the following language:

[T]he part for Donor's son, GERALD J. DIBERT, shall include: Donor's farm

chattels (including grain, livestock, etc.) and Donor's farm real estate. In the event that the value of the afore-described property to be included in GERALD J. DIBERT'S part exceeds the value of his fifty percent (50%) overall distribution, then GERALD J. DIBERT shall have the option to purchase all of the remainder of such property having a value in excess of that which is placed in his trust, at the value of such property as established for Ohio Estate Tax purposes, *provided that this option to purchase must be exercised within a period of ninety (90) days from the date of Donor's death.*

(Capitalization sic.; italics added.)

{¶ 9} Jane was initially appointed trustee of the Dibert Trust. The Trust specified that if Jane died or no longer was able to serve as trustee, Gerald and Cynthia were to serve as co-trustees.

{¶ 10} Kenneth Dibert died in October 1993, and Jane became the life income beneficiary of the Dibert Trust; Gerald and Cynthia were appointed co-trustees of the Dibert Trust. According to Gerald's deposition testimony, within 90 days of his father's death, in early 1994, he attempted to exercise his right-to-purchase option but was told by an attorney that he could not do so because the property had been placed into a trust.

{¶ 11} On December 13, 1996, Attorney Allen Maurice, as attorney for the successor trustee to the Pickering Trust, sent a letter to Gerald and Cynthia, as co-trustees of the Dibert Trust, indicating that the approximately $271,000 indebtedness to the Pickering Trust needed to be addressed. Gerald and Cynthia attempted to obtain a loan to pay the indebtedness, but they were unsuccessful.

{¶ 12} In 1997, Cynthia was appointed successor trustee to the Pickering Trust. In May 1999, Gerald and Cynthia, as co-trustees of the Dibert Trust, conveyed two parcels of land to the Pickering Trust to satisfy the note and mortgage. The fiduciary deed including the following language: "This conveyance is subject to the right to purchase the above described real estate granted to Gerald A. Dibert as set forth in the Kenneth A. Dibert Trust, dated March 12, 1991."

{¶ 13} Lucille Pickering, the income beneficiary of the Pickering Trust, died in July 2007. According to the record, Jane Dibert, income beneficiary of the Dibert Trust, is alive and resides in Champaign County.

{¶ 14} In November 2007, Gerald, as a beneficiary of the Pickering Trust, filed this lawsuit against Cynthia[2], both individually and as trustee of the Pickering Trust, alleging that (1) Cynthia had breached her fiduciary duties as trustee of the Pickering Trust, (2) Cynthia converted Pickering Trust property for her own use, (3) Cynthia had been unjustly enriched by her actions; and (4) Cynthia should be removed as trustee of the Pickering Trust.[3] Gerald sought an accounting of the Pickering Trust and a jury trial on Counts Two, Three, and Four.

{¶ 15} In January 2008, Cynthia filed an answer, which denied any wrongdoing, and brought four counterclaims. The first counterclaim sought a declaratory judgment as to Gerald's right to exercise the option to purchase the property transferred to the

---

[2] Gerald also sued Attorney Allen Maurice. The trial court granted summary judgment to Maurice on those claims, which sounded in legal malpractice, because they were not brought within the applicable statute of limitations. The trial court certified the ruling as immediately appealable, but the summary judgment was not appealed.

[3] The lawsuit was filed in the General Division of common pleas court, but was transferred to the Domestic Relations-Juvenile-Probate Division.

Pickering Trust by fiduciary deed. The second counterclaim alleged that Gerald had interfered with an agreement between the Pickering Trust and a prospective tenant of Pickering Trust property. The third alleged that Gerald interfered with a long-standing rental agreement between the Pickering Trust and Gerald's son. The fourth alleged that Gerald, as co-trustee of the Dibert Trust, breached his fiduciary duty and engaged in self-dealing, contrary to R.C. 2109.44. Cythnia sought relief as "acting trustee of the Pickering Trust" and as "Co-Trustee of the Dibert Trust."

{¶ 16} On February 28, 2008, Gerald filed his "Answer to Counterclaim." Gerald denied the claims against him and, in responding to Cynthia's allegations, alleged that Cynthia breach her fiduciary duties regarding both the Pickering and Dibert Trusts. Gerald also asserted that he was owed money from the Dibert Trust for actions he had taken and that Cynthia owed money to the Dibert Trust. However, Gerald did not raise these allegations as counterclaims against Cynthia regarding the Dibert Trust. Gerald also stated that damages needed to be determined by a jury, but he did not include an express jury demand, as specified in Civ.R. 38.

{¶ 17} On January 8, 2009, the trial court held that Gerald lacked either a constitutional or statutory right to a jury trial in probate court. Gerald sought to appeal the trial court's ruling, but we dismissed the appeal for lack of a final appealable order. *Dibert v. Carpenter*, 2d Dist. Champaign No. 2009-CA-09 (June 17, 2009).

{¶ 18} In February 2009, Judge Reisinger began her term as a newly-elected judge of the Champaign County Court of Common Pleas, Domestic Relations/Juvenile/Probate Division. On February 13, 2009, Judge Reisinger recused herself and another newly-elected judge from the case due to a conflict of interest. The retiring judge was

appointed, by assignment, to continue presiding over the case.

{¶ 19} In November 2010, Cynthia filed a motion for partial summary judgment on Gerald's claims, which was granted in part and denied in part; the court certified the judgment as immediately appealable, pursuant to Civ.R. 54(B). Gerald appealed the trial court's grant of summary judgment on his claim that Cynthia fraudulently induced the transfer of property from the Dibert Trust to the Pickering Trust. Cynthia cross-appealed, claiming that the trial court erred in denying her motion for summary judgment on Gerald's conversion claim.

{¶ 20} We affirmed the trial court's grant of summary judgment to Cynthia on the fraud-based claim, and dismissed Cynthia's cross-appeal for lack of a final appealable order. *Dibert v. Carpenter*, 196 Ohio App.3d 1, 2011-Ohio-5691, 961 N.E.2d 1217 (2d Dist.). We commented that "[t]here was no evidence that Carpenter acted improperly when she pursued, after her appointment as successor trustee, the repayment of the monies owed by the Dibert trust to the Pickering trust -- of which she and Dibert were both beneficiaries. Nor is there any evidence that Carpenter improperly persuaded or coerced Dibert to make the transfer." *Id.* at ¶ 28. We further stated that Gerald "was on constructive notice that his right to purchase had already expired when he signed the deed transferring the property from the Dibert trust to the Pickering trust." *Id.* at ¶ 35.

{¶ 21} On June 9, 2011, on its own initiative, the trial court ordered Gerald and Cynthia removed as co-trustees of the Dibert Trust; the court noted the animosity between the parties and that each party had sought removal of the other as co-trustee of the Dibert Trust. The court appointed Howard Traul as a "special fiduciary" to administer the trust,

pursuant to R.C. 5807.06(C) and R.C. 5810.01(B). The trial court later ordered Traul, in his capacity as special fidiciary of both the Pickering and Dibert Trusts, to be added as a party to the litigation.

{¶ 22} On July 31, 2012, Cynthia, as trustee of the Pickering Trust and individually, filed an amended counterclaim against Gerald. Cynthia brought thirteen claims for relief, all of which claimed that Gerald misused funds and property from the Dibert Trust for his personal benefit. Cynthia claimed that Gerald violated his duty to administer the Dibert Trust in good faith and his duty of loyalty, contrary to R.C. Chapter 5808. Cynthia requested relief "as a co-equal beneficiary of the Dibert Trust."

{¶ 23} Gerald filed an answer to the counterclaims, denying the allegations and raising defenses; he did not assert any claims against Cynthia related to the Dibert Trust or request a jury trial on Cynthia's counterclaims.

{¶ 24} On November 26, 2012, the parties reached an agreement in open court on the issues raised by Gerald's complaint; Cynthia agreed that she owed $120,000 to the Pickering Trust. The trial court issued a judgment entry the following day, which set forth the settlement amount and approved the settlement. On March 8, 2013, the trial court issued an agreed entry addressing the distribution of the Pickering Trust assets. The trial court included language under Civ.R. 54(B), but in the agreement, the parties waived their right to appeal the judgment. No appeal was filed.

{¶ 25} Cynthia's counterclaims against Gerald regarding the Dibert Trust remained pending, and the trial on those claims was set to begin on September 30, 2013.

{¶ 26} On June 26, 2013, the judge who had been handling the case recused himself, and Judge Reisinger issued an order stating that she would be the presiding

judge "in finalizing the matter." A conference between the attorneys and counsel was held on August 2, 2013. As a result of that conference, on August 8, the trial court issued several orders, including that Jane Dibert, as life income beneficiary of the Dibert Trust, be joined as a party, that the special fiduciary investigate refinancing a mortgage with First Central Bank, that discovery be exchanged immediately, that counsel "brief their respective positions on the trust," and that a settlement conference be held on September 30.

{¶ 27} On August 23, 2013, Gerald's counsel wrote a letter to Judge Reisinger expressing concern about the judge's personal contact with participants in the litigation and/or individuals who are close to the participants. On September 4, the trial court issued an entry indicating that the court had held a conference call with the parties' counsel and special fiduciary of the Dibert Trust regarding the August 23 letter. The entry stated that, "[b]ased upon the representations of the Court, [Gerald's attorney] withdraws his request for Judge Reisinger to recuse herself from this matter. Judge Reisinger shall continue to preside."

{¶ 28} Pursuant to the August 8 order, counsel for Gerald and Cynthia filed lengthy trial memoranda regarding the claims concerning the Dibert Trust. In his memorandum, Gerald indicated that he had loaned money to the trust and had paid personal money on behalf of the trust. Gerald also filed documents requesting reformation of the Dibert Trust and the ability to exercise the purchase option provision. In her memorandum, Cynthia argued, in part, that Gerald should not be permitted to raise new claims after six years of litigation. Cynthia filed a motion in limine, seeking to restrict Gerald from presenting evidence on newly-asserted but unpled claims.

{¶ 29} A settlement conference was held, as scheduled, on September 30, but no settlement was reached.   Trial on the counterclaims began on October 22, 2013.

{¶ 30} Prior to the presentation of testimony on October 22 (Gerald was the sole witness that day), the trial court made the following rulings from the bench regarding Cynthia's motion in limine, which were later journalized as follows:

Issue #1 Reformation of the Trust.

> This Court will hold in abeyance until all evidence is heard to determine whether the settlor's intention(s) need to be addressed in the final outcome.

Issue # 2 Relitigation of the Option Provision

> The Court finds that the "Option Provision" was decided by both this Court and the Appellate Court and those Orders shall stand and not be reconsidered or litigated.

Issue # 3 Plaintiff's unpled Claims and Defenses.

> The Court will not hear unpled claims and/or defenses as they are not properly before the Court for consideration.

{¶ 31} After the oral rulings on Cynthia's motion in limine, Gerald orally moved to amend his answer to Cynthia's counterclaims, seeking to add claims related to the Dibert Trust; the motion was orally denied as untimely.   On October 30, Gerald attempted to file a written motion for leave, but the motion was not accepted by the clerk for filing.

{¶ 32} A second day of trial was held on October 31, 2013, although most of the day involved settlement discussions and no testimony was taken.   Prior to the hearing, Gerald filed a motion asking the trial court to reconsider its rejection of Gerald's motion

for leave to file an amended answer and counterclaim. The trial court orally granted the motion to reconsider in part, allowing the motion for leave itself to be filed, but not the proposed amended answer.

{¶ 33} A third day of trial was held on November 27, 2013. During Gerald's testimony, he testified to a letter, signed by James R. Wilson, that was sent to him from Citizens National Bank. The trial court stopped the hearing and reminded the parties that Wilson was the trial judge's father. The trial court recessed to permit counsel to discuss the matter with their clients.

{¶ 34} During the recess, Gerald successfully filed his motion for leave to amend his answer to Cynthia's counterclaims. Gerald's written motion indicated that Cynthia was aware of his proposed new claims (seeking repayment of the loans he allegedly had made to the Dibert Trust), that she had previously been provided the documentation that supports it, and that she had used the documentation in settlement negotiations. Gerald also filed a "motion to close this case." After proceedings resumed, the trial court orally overruled the motion for leave.

{¶ 35} With respect to the potential conflict of interest, Gerald informed the court that he intended to call Wilson as a witness. Although Cynthia wished to proceed with the hearing, the court determined that "at a minimum a perception of a conflict" existed, and the judge orally recused herself. In light of her recusal, the judge declined to rule on the "motion to close the case."

{¶ 36} On January 3, 2014, retired judge James Rapp from Hardin County was appointed by the Supreme Court of Ohio to preside over the matter. (The certificate of assignment, which indicated the effective date of Judge Rapp's appointment, was not

filed in the trial court at that time.) On January 22, 2014, Judge Reisinger issued written entries memorializing the events and her oral rulings of October 22 and 31 and November 27, 2013. On January 31, 2014, Judge Rapp's certificate of assignment was filed in the trial court.

**{¶ 37}** Gerald obtained new counsel, and the continuation of the trial was ultimately scheduled to begin on September 16, 2014.

**{¶ 38}** A pretrial conference was held on August 28, 2014. According to the court's subsequent order of September 2, 2014, the court granted an oral motion to substitute Traul, the special fiduciary of the Dibert Trust, as defendant for Cynthia, in her capacity as co-trustee of the Dibert Trust. The court and parties had also reviewed the status and merits of Gerald's November 27, 2013 motion for leave to amend his answer to the first amended counterclaim and his motion to close the case. The court overruled the motions, finding "for reasons readily apparent in the record" that neither motion was "well taken."

**{¶ 39}** On September 16, 2014, the scheduled trial date, Gerald moved to "suspend proceedings pending identification of real party in interest." He asserted that Cynthia lacked standing to prosecute her counterclaims against him, because she had been removed as co-trustee of the Dibert Trust. Gerald argued that Cynthia's claims were more properly brought by the trustee of the Dibert Trust (i.e., Traul), not the beneficiaries.

**{¶ 40}** Cynthia opposed the motion, arguing that Gerald had not raised "real party in interest" as a defense in his answer to the amended counterclaim and that, as a beneficiary, she had standing to raise a breach of trust claim against the trustee. Cynthia

noted that the trial court had previously held on February 10, 2011, that a beneficiary can bring such a claim, and that the law of the case doctrine precluded Gerald's argument. The trial did not proceed.

{¶ 41} On November 14, 2014, while the motion to suspend proceedings was pending, Gerald filed a motion "to avoid orders by recused judge." Specifically, he asked the trial court to strike the orders docketed on January 22, 2014 on the ground that Judge Reisinger "did not have judicial authority to enter an Order in this case subsequent to the appointment of James S. Rapp by the Supreme Court of Ohio as Successor Judge in this case."

{¶ 42} On January 9, 2015, the trial court denied Gerald's motions to suspend proceedings and to avoid orders by the recused judge. (Doc. #168, File #13) The trial court reviewed the chronology of proceedings in the case, including "the record and the transcript with respect to each of the judgment entries [on January 22, 2014]." The court held: "Having reviewed the record and transcript, the court concludes that Plaintiff Dibert's motions are untimely and/or without merit except that the Court concludes that Dibert should have been permitted to file his proposed 'amended answer and counterclaim.' " The court's order stated, in part:

> 3. In order to clarify the record and cure any procedural errors, the undersigned presiding judge now makes the following ORDER:
>
> > A. With regard to Defendant's [Cynthia's] motion in limine filed October 16, 2013 the motion is well-taken and the Court will not hear unpled claims and/or defenses as they are not properly before the Court for consideration.

B. With regard to Defendant's motion in limine filed October 16, 2013, the Motion is well taken and the Court finds that the "Option Provision" was decided by both this Court and the Appellate Court and those Orders shall stand and will not be reconsidered or litigated.

C. With regard to Defendant's motion in limine filed October 16, 2013, as to Plaintiff's [Gerald's] proposed reformation of trust, this issue has not been raised by any pleading before the Court. However, the Court will not make a ruling at this time.

4. This Judge concurs and reaffirms Judge Reisinger's rulings to deny Plaintiff leave to file an amended "answer and counterclaim" during trial proceedings. See ENTRY filed September 2, 2014. This Court DENIES Plaintiff's Motion for Leave to Amend his Answer. However, in order to clarify the record and cure any procedural errors, Plaintiff may file the "proposed amended answer and counterclaim" he had attempted to file after commencement of the trial. Each page shall be clearly marked as a "proposed amended answer and counterclaim." Plaintiff may file such "proposed amended answer and counterclaim" at any time before recommencement of trial on January 15, 2104 [sic, 2015].

{¶ 43} The completion of the trial was ultimately held on February 9, 2015 and February 13, 2015. Counterclaims Five, Eleven, and Thirteen were withdrawn by Cynthia. On May 7, 2015, the trial court entered judgment in favor of Traul, as successor trustee of the Dibert Trust, on four of the remaining counterclaims, as follows:

| Counter-Claim # | Description of Counterclaim | Principal amount owed |
|---|---|---|
| 1 | The Trust paid money on Gerald's behalf for his portion of the Citizens National Bank note executed and delivered on Sept. 9, 1986 | $26,261.32 |
| 2 | The Trust paid money to Peoples Savings Bank to stop the bank from proceeding to sell all real property that Gerald owned, including the real property identified as the "Strayer Farm" at a sheriff's sale as a result of foreclosure | $25,000 |
| 3 | The Trust paid money on Gerald's behalf representing interest on the Dillon Loan, a loan under which the Trust leveraged its property as collateral so that Gerald could receive the benefit of the $210,000 loan | $31,500 |
| 4 | Gerald is responsible for his portion of the $300,000 Dibert Trust Loan from First Central Bank dated April 6, 2010 | $230,000 |

The trial court dismissed counterclaims five through thirteen.

{¶ 44} On May 27, 2015, Cynthia filed a motion and application for attorney fees. Two days later, prior to a ruling on Cynthia's motion, Gerald filed a notice of appeal of the court's May 7, 2015 judgment. On June 5, 2015, Cynthia filed a "Suggestion of Remand" in this appellate court, asserting that the case should be remanded to the trial court to resolve her pending application for attorney fees. We sustained the "suggestion," pursuant to App.R. 4(B).

{¶ 45} Upon remand, Gerald filed a memorandum opposing any award of attorney fees. After a hearing, the trial court awarded $105,127 in attorney fees, plus $719.50 in deposition costs, to Cynthia.

{¶ 46} Gerald raises five assignments of error on appeal.

## II. Right to Jury Trial

{¶ 47} In his first assignment of error, Gerald claims that the trial court erred when it denied him a jury trial, as demanded in Gerald's complaint. Gerald argues that Article I, Section 5 of the Ohio Constitution grants him a constitutional right to a jury trial, and the

trial court erred in concluding that he lacked either a constitutional or statutory right to a jury trial. Cynthia responds that Gerald's appeal of this issue is barred by res judicata, that he made only a limited demand for a jury trial that did not encompass her counterclaims, and that the trial court correctly held that it was acting as a court of equity in this case and thus no constitutional right to a jury trial exists.

{¶ 48} First, Cynthia claims that res judicata bars Gerald's appeal of the trial court's January 2009 order, because he failed to appeal that order in 2011 as part of his appeal from the trial court's grant of partial summary judgment against him. We disagree.

{¶ 49} We addressed this issue in *Trotwood v. S. Cent. Constr., L.L.C.*, 192 Ohio App.3d 69, 2011-Ohio-237, 947 N.E.2d 1291 (2d Dist.), saying:

The issue before us, then, is whether a trial court's inclusion of Civ.R. 54(B) certification on one otherwise interlocutory order (the declaratory-judgment ruling) makes another otherwise interlocutory order (the ruling on the residents' motion for leave to amend) final and appealable. Although neither party has cited a case on point, we conclude that it does not. "[A]n order that neither disposes of all claims between the parties nor contains an express determination that there is no just reason for delay is an interlocutory order. * * * When an order of a trial court is interlocutory, the order remains subject to revision or modification by the trial court until and unless the order is certified as suitable for appeal, or the action is finally terminated as to all claims and all parties. Once a final judgment is issued terminating a case, all interlocutory orders are merged into the final judgment." (Citations omitted.) *Lingo v. Ohio Cent. RR. v. Norfolk S. Ry.*,

Franklin App. No. 05–AP–206, 2006-Ohio-2268, ¶ 17.

*S. Cent. Constr.* at ¶ 57.   We held that, unless the interlocutory order were certified as immediately appealable or until the trial court "terminated the actions as to all claims and all parties," the interlocutory order was not appealable.   *Id.* at ¶ 58.

{¶ 50} Here, Gerald attempted to appeal the trial court's ruling on his right to a jury trial in 2009.   We dismissed that appeal for lack of a final appealable order.   Gerald's 2011 appeal concerned the grant of a motion for partial summary judgment, an order that would have been interlocutory but for the trial court's Civ.R. 54(B) certification.   The judgment on appeal in 2011 did not terminate the action as to all claims and parties.   Accordingly, the January 2009 interlocutory order relating to Gerald's right to a jury trial did not merge into that 2011 judgment, and res judiciata does not bar Gerald's appeal of the denial of his request for a jury trial.

{¶ 51} Second, Cynthia asserts that Gerald did not properly demand a jury trial on her counterclaims.   Pursuant to Civ.R. 38(B), "[a]ny party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefor at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue."   Civ.R. 38(B) continues: "Such demand shall be in writing and may be indorsed upon a pleading of the party.   If the demand is indorsed upon a pleading the caption of the pleading shall state 'jury demand endorsed hereon.' " (Indorse v. endorse sic.)

{¶ 52} Civ.R. 38(C) further provides:

In his [or her] demand a party may specify the issues which he [or she] wishes so tried; otherwise he [or she] shall be deemed to have demanded

trial by jury for all the issues so triable. If he [or she] has demanded trial by jury for only some of the issues, any other party within fourteen days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

Civ.R. 38(C). Thus, "if a general jury demand is made without specifying particular issues, it will be interpreted as a demand for a jury trial on all issues triable by a jury." *Soler v. Evans, St. Clair & Kelsey*, 94 Ohio St.3d 432, 437, 763 N.E.2d 1169 (2002).

**{¶ 53}** The Ohio Supreme Court has held that, once a general jury demand is made, the demand applies to all issues raised in the litigation, including subsequently filed counterclaims, and a second jury demand is not required after the filing of the counterclaims. *Id.* Moreover, the demand remains effective even if the claims brought by the party requesting the jury trial are later dismissed. *See id.*

**{¶ 54}** The body of Gerald's complaint requested a jury trial "on Counts Two, Three, and Four." However, Gerald failed to include a jury demand in the form that Civ.R 38(B) requires. The endorsement of the jury demand in the caption "is intended to insure that the right will not be overlooked." *Tipp City v. Watson*, 2d Dist. Miami No. 02CA43, 2003-Ohio-4836, ¶ 16. Although a demand for a jury trial in a pleading without the endorsement in the caption does not comply with Civ.R. 38(B), "[m]ost courts hold that, at least if no prejudice befalls the opposing party, failure to include the requisite phraseology in the caption makes the demand technically deficient but does not operate as a waiver of jury trial if the demand is otherwise timely and proper." *Id.*, quoting Baldwin's Ohio Civil Practice, Section 38:24. It is apparent from the trial court's rulings

on Gerald's request for the jury trial that the trial court considered Gerald's request in his complaint to be adequately raised.

{¶ 55} Assuming that Gerald's request for a jury was effective, the complaint specified the issues that Gerald wanted to be tried by a jury, and his demand did not constitute a general jury demand, such that it would encompass any counterclaims or cross-claims that might later be filed. Because Gerald's complaint included only a limited jury demand (i.e., Counts Two, Three, and Four), the jury demand in his complaint did not extend to Cynthia's later-filed counterclaims.

{¶ 56} Gerald's answer to the relief portion of Cynthia's counterclaims also indicated that he believed that a jury trial was necessary to determine the amount of damages, if any. In response to paragraphs 4 and 5 of the relief portion of Cynthia's pleading (which requested damages in favor of the Pickering Trust and Dibert Trust, respectively), Gerald states that the amount of any judgment must be determined by a jury. Like his complaint, Gerald failed to endorse a jury demand in the caption of his pleading. Again assuming that the lack of an endorsement in the caption did not constitute a waiver, it is questionable, at best, whether Gerald's response to Cynthia's original counterclaims constituted even a limited jury demand on her counterclaims.

{¶ 57} In his January 7, 2009 "Memorandum in Support of Trial by Jury," Gerald asserted that he had a right to a jury on Counts 2, 3, and 4 of his Complaint. He argued that Count 2 (conversion) and Count 3 (unjust enrichment) were claims for monetary damages, which were claims at law, not in equity. He further argued that he had sought punitive damages, which was a matter for a jury. Gerald acknowledged that he had failed to include the required endorsement in the caption of his pleading, but argued that

it should not result in a waiver in this case. Gerald did not argue, or even mention, that he also had a right to jury trial on Cynthia's counterclaims.

{¶ 58} Cynthia amended her counterclaims in 2012. The amendment removed the claims regarding the Pickering Trust and replaced the single counterclaim regarding the Dibert Trust (which raised four alleged instances of misconduct by Gerald as co-trustee) with thirteen counterclaims regarding the Dibert Trust; Counts One through Four of the amended counterclaim each addressed a particular allegation of misconduct by Gerald as co-trustee of the Dibert Trust that had been raised in the original counterclaim regarding that trust. Counts Five through Thirteen raised new allegations of misconduct by Gerald as co-trustee of the Dibert Trust.

{¶ 59} Gerald filed an answer to the amended counterclaims on September 20, 2012. The answer denied the allegations and raised affirmative defenses, but made no reference to or demand for a jury trial on the amended counterclaims.

{¶ 60} Once a jury demand is made, the party demanding a jury trial cannot simply withdraw that request. See Civ.R 39(A); *Cleveland v. Lancaster*, 2d Dist. Greene No. 02CA123, 2003-Ohio-4976. However, based on the record before us, we find no clear demand for a jury trial on Cynthia's counterclaims. Gerald did not include a demand for a jury trial or the jury demand endorsement in his original answer to Cynthia's counterclaim (although a jury was mentioned), his subsequent memoranda in support of his right to a jury trial addressed only his own claims, and he did not include a jury demand, of any kind, in his answer to Cynthia's amended counterclaims.

{¶ 61} Even assuming, for sake of argument, that Gerald adequately requested a jury trial on Cynthia's counterclaims, we agree with the trial court that he was not entitled

to a jury trial. R.C. 2101.31, which addresses the right to a jury trial in probate court, provides: "All questions of fact shall be determined by the probate judge, unless the judge orders those questions of fact to be tried before a jury or refers those questions of fact to a special master commissioner as provided in sections 2101.06 and 2101.07 of the Revised Code." R.C. 2101.31 gives the probate judge discretion whether to allow a jury trial, and Gerald had no statutory right to a jury trial in probate court.

{¶ 62} We note that Gerald originally filed his action in the General Division of the common pleas court, which has concurrent jurisdiction over claims involving intervivos trusts (*see* R.C. 2101.24(B)(1) and R.C. 5802.03). But, Gerald agreed to the transfer of his action from the General Division of the common pleas court to the Domestic Relations-Juvenile-Probate Division. Whether Gerald would have had a statutory right to a jury trial in the common pleas court is not before us.

{¶ 63} Gerald claims that R.C. 2101.31 is unconstitutional, because he has a right to a jury trial under Article I, Section 5 of the Ohio Constitution. That Section provides: "The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury."

{¶ 64} The Ohio Supreme Court has long held that Section 5 does not guarantee the right to a jury trial in all contexts, but rather "guarantees the right of trial by jury in those cases where it existed previous to its adoption." *Belding v. State*, 121 Ohio St. 393, 169 N.E. 301 (1929), syllabus. As stated by the Ohio Supreme Court:

Section 5 of the Ohio Bill of Rights provides that "the right of trial by jury shall be inviolate," etc. It was not, however, the intention of the framers

of that clause of the Bill of Rights to guarantee the right of trial by jury in all controversies. That guaranty only preserves the right of trial by jury in cases where under the principles of the common law it existed previously to the adoption of the Constitution. The right of trial by jury has uniformly been recognized and enforced in this state in actions for money, where the claim is an ordinary debt, but it is equally well recognized that many special proceedings for the enforcement of a moral duty, where the payment of money is the ultimate relief granted, does not entitle the parties to a jury trial. Nearly all alimony proceedings are for the recovery of money, and an order for payment of money either in bulk or in installments is usually granted. No one would contend that a jury trial was guaranteed in that character of cases. In *Brown, Ex'r, v. Reed*, 56 Ohio St. 264, 46 N. E. 982, it was held that an executor who exercises bad faith in the sale of lands under a testamentary power to sell can be charged with the difference between an inadequate sale price and the true value of the lands, and it was stated by Judge Shauck in the opinion that the guaranty of the right of trial by jury does not extend to such a proceeding.

*Belding* at 396-397.

{¶ 65} "[W]hether a proceeding is a case in chancery or an action at law is to be determined from the pleadings and from the issues made thereby." *Gantz v. Louisville*, 155 Ohio St. 425, 428-429, 99 N.E.2d 308 (1951). Chancery courts historically had jurisdiction of trusts and trust estates. *See Madden v. Shallenberger*, 121 Ohio St. 401, 406, 169 N.E.450 (1929); Official Comment to R.C. 5802.01 (Uniform Trust Code § 201,

Role of court in administration of trust).

{¶ 66} Because Gerald settled his claims against Cynthia, we need not address whether Gerald had a constitutional right to a jury trial on his claims; any error in the trial court's ruling regarding Gerald's claims is moot.

{¶ 67} Cythnia's amended counterclaims, which were the only claims that were tried, asserted that Gerald had violated his duty to administer the Dibert Trust in good faith and had breached his duty of loyalty by misusing trust funds and property for his personal benefit, contrary to the Uniform Trust Code. Her claims concerned the administration of a trust and sought redress for a trustee's alleged breaches of the duties of loyalty and to administer the trust. Although the requested redress for Cynthia's claims was monetary, the nature of the dispute arose in equity.

{¶ 68} Gerald's first assignment of error is overruled.

### III. Adjudication of Counterclaims

{¶ 69} In his second assignment of error, Gerald claims that the trial court erred when it "accepted and proceeded to adjudicate" Cynthia's counterclaims. Gerald emphasizes that his claims were brought against Cynthia individually and as trustee of the Pickering Trust and dealt "exclusively with the distribution of residual assets of the Pickering Trust." Gerald argues that Cynthia's counterclaims based on the Dibert Trust should not have been adjudicated, because "neither the Dibert Trust nor a Dibert Trustee was a party to the action."

{¶ 70} Cynthia advances four arguments as to why the trial court properly adjudicated her counterclaims: (1) she is the real party in interest; (2) Gerald waived any argument that Cynthia was not the real party in interest; (3) acceptance of the

counterclaims for litigation was "consistent with the principal goal of the civil rules, that being to permit the resolution of all controversies between the parties in a single suit"; and (4) Cynthia's standing to bring the counterclaims is determined as of the commencement of the action, in this case, at the time the counterclaims were filed.

{¶ 71} Under Civ.R. 13, a pleader (1) *shall* state a counterclaim against any "opposing party" if the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction," Civ.R. 13(A), or (2) *may* state a counterclaim against an "opposing party" if the claim does not arise out the transaction or occurrence that is the subject of the opposing party's claim, Civ.R. 13(B).

{¶ 72} In general, a party appears only in the capacity in which it is named. Thus, the "opposing party" requirement regarding counterclaims generally means that when a party has brought suit in one capacity, the opposing party may not state a counterclaim against that party in a different capacity; the parties must have the same capacity in both the claim and the counterclaim. *See, e.g.,* 75 Ohio Jurisprudence 3d Pleading, Section 218 (Mutuality of Parties and Demands); *Collection Center, Inc. v. Bydal*, 2011 N.D. 63, 795 N.W.2d 667 (2011); *United States Fidelity and Guar. Co. v. Goudeau*, 272 S.W.3d 603, 609 (Tex.2008) ("while a compulsory counterclaim must be brought against an 'opposing party,' the latter term does not include claims against the same party acting in a different capacity"); *Pomfret Farms Ltd. Partnership v. Pomfret Assoc.*, 174 Vt. 280, 285, 811 A.2d 655, 660 (2002); *McLeod v. Sandy Island Corp.*, 260 S.C. 209, 219-220, 195 S.E.2d 178, 183 (1973) (defendant, sued as officer and director of corporation, could

not bring counterclaim in his individual capacity); *Ehrlich v. American Moninger Greenhouse Mfg. Corp.*, 26 N.Y.2d 255, 260, 257 N.E.2d 890, 892 (1970); *Wesolowski, v. Erickson*, 5 Wis.2d 335, 341-342, 92 N.W.2d 898, 902 (1958). *See also, e.g., In re Adbox, Inc.,* 488 F.3d 836, 840 (9th Cir.2007).

{¶ 73} Nevertheless, some courts have recognized two exceptions to the "same capacity" rule. *See, e.g., Bydal* at ¶ 41*; Pomfret Farms Ltd. Partnership*, 811 A.2d at 660; *Blanchard v. Katz*, 117 F.R.D. 527, 529 (S.D.N.Y.1987).

> First, if a plaintiff has sued in a representative capacity but will benefit individually from any recovery, a counterclaim may be made against the plaintiff in his individual capacity. Second, a counterclaim may be made against a plaintiff in a capacity different than that in which he sued if principles of equity and judicial economy support such a counterclaim.

*Blanchard* at 529. *See also, e.g., Kreamer Sports, Inc. v. Rocky Brands, Inc.*, Case No. 2:06cv576, 2007 WL 1144865 (S.D. Ohio Apr. 16, 2007); *Rhodes, Inc. v. Morrow*, 937 F.Supp. 1202, 1207 (M.D.N.C.1996).

{¶ 74} As detailed above, Gerald's complaint was brought in his individual capacity and raised allegations against Cynthia concerning her conduct as trustee of the Pickering Trust; Gerald brought suit against her individually and as trustee of the Pickering Trust. Cynthia counterclaimed as trustee of the Pickering Trust and co-trustee of the Dibert Trust. She sought a declaratory judgment regarding the option-to-purchase provision and raised two claims that Gerald interfered with arrangements between the Pickering Trust and third parties. Cynthia's fourth counterclaim alleged that Gerald breached his fiduciary duty and engaged in self-dealing as co-trustee of the Dibert Trust; the

counterclaim alleged a number of different transactions (which were later separated into four of the counts in Cynthia's amended counterclaim).

{¶ 75} In her capacity as trustee of the Pickering Trust and individually, Cynthia was entitled to bring counterclaims against Gerald, pursuant to Civ.R. 13, for conduct that harmed the Pickering Trust. Cynthia, in her capacity as co-trustee of the Dibert Trust, was not a party to the action, and she could not bring a claim as the co-trustee of the Dibert Trust.

{¶ 76} However, Gerald's answer to Cynthia's counterclaim did not include any defenses, as set forth in Civ.R. 12. Specifically, he did not raise that the counterclaim concerning the Dibert Trust was not brought by the real party in interest (if construed as raised by Cynthia as trustee of the Pickering Trust) or by a party that had not been properly joined in the action (Cynthia as co-trustee of the Dibert Trust). Gerald did not move to dismiss the counterclaim concerning the Dibert Trust as being improperly raised. To the contrary, prior to the filing of Cynthia's amended counterclaim, Gerald litigated the counterclaims related to the Dibert Trust, without objection, such as by filing a motion to remove Cynthia as co-trustee of the Dibert Trust (Apr. 5, 2011) and participating in a pretrial hearing on Cynthia's counterclaims (June 5, 2012).

{¶ 77} The trial court was under no obligation to address, sua sponte, whether Cynthia's original counterclaim regarding the Dibert Trust was properly raised. Given Gerald's failure to raise a "different capacity" defense and his litigation of all claims raised in the parties' pleadings, we find no error in the trial court's failure to dismiss Cynthia's original counterclaim concerning the Dibert Trust. *See First Union Natl. Bank ex rel. Southeast Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp., Ltd.*, 351 F.3d

810, 815 (8th Cir.2003) ("a plaintiff submits its alternate capacity to the jurisdiction of the court if it defends the counterclaim on the merits and fails to proffer a 'different capacity' defense").

{¶ 78} Civ.R. 15(A) allows for amendment of pleadings by leave of court and provides that "[l]eave of court shall be freely given when justice so requires." Cynthia's amended counterclaim was filed with leave of court on July 31, 2012. The amended counterclaim states that it was brought by Cynthia individually and as trustee of the Pickering Trust; she demanded relief as "a co-equal beneficiary of the Dibert Trust." In essence, the amended counterclaim substituted Cynthia individually (who had been a party throughout the litigation) for herself as co-trustee of the Dibert Trust; both the original counterclaim and amended counterclaim were also brought by Cynthia as trustee of the Pickering Trust. Cynthia's amended counterclaim, filed with the court's permission pursuant to Civ.R. 15(A), superseded her prior counterclaim. *See Gordon v. Morris*, 2d Dist. Greene No. 99CA109, 2000 WL 873191, *2 (June 30, 2000).

{¶ 79} Gerald's answer to the amended counterclaim expressly set forth five specific affirmative defenses, including that Cynthia had failed to join all necessary parties and that she failed to state a claim upon which relief may be granted. The answer did not include the defense that Cynthia was not the real party in interest.[4]

---

[4] Gerald's answer to Cynthia's amended counterclaim attempted to preserve any affirmative defenses that he might later identify through discovery. Given the requirement in Civ.R. 8(C) that a party "set forth affirmatively" his or her affirmative defenses, we question whether this broad language was adequate to preserve any unspecified affirmative defenses, absent the filing of an amended pleading. Regardless, at the time that Gerald filed his answer to Cynthia's amended counterclaim, Cynthia was no longer a trustee of either the Pickering Trust or the Dibert Trust, and Gerald knew or should have known of a potential real-party-in-interest defense. Thus, pursuant to Civ.R. 8(C), Gerald should have raised that defense in his answer to Cynthia's amended

{¶ 80} In his motion to suspend litigation, Gerald ultimately raised that the counterclaims were not brought by the real party in interest, because Cynthia had been removed as co-trustee of the Dibert Trust; Gerald argued that it was within the province of the trustee (i.e., Special Fiduciary Traul) to pursue her claims for breach of duty. The court concluded that, as a residual beneficiary, Cynthia individually was a proper party to assert a breach of duty claim against Gerald for his actions as a co-trustee of the Dibert Trust. We agree.

{¶ 81} A "real party in interest" is defined as " 'one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is *directly* benefitted or injured by the outcome of the case.' " (Emphasis sic.) *Countrywide Home Loans, Inc. v. Swayne*, 2d Dist. Greene No. 2009 CA 65, 2010-Ohio-3903, ¶ 28, quoting *Shealy v. Campbell*, 20 Ohio St.3d 23, 24, 485 N.E.2d 701 (1985).

{¶ 82} A trustee has a duty to administer the trust in good faith, in accordance with the trust's terms and purposes, the interests of the beneficiaries, and applicable law. *See* R.C. 5808.01 (setting forth the duties of a trustee). A trustee must administer a trust solely in the interests of the beneficiaries. R.C. 5808.02. It thus follows that, if a trustee breaches his or her fiduciary duty under the trust, a beneficiary with a vested interest in the trust has a direct interest in the outcome of any litigation related to the breach. *See Papiernik v. Papiernik*, 45 Ohio St.3d 337, 544 N.E.2d 664 (1989), syllabus ("A remainderman holding a vested interest in a trust which is subject to defeasance by the exercise of a testamentary power of appointment has standing to maintain an action to modify the administrative provisions of the trust agreement.")

---

counterclaim if he wished to preserve it.

{¶ 83} This is consistent with the fact that a trustee acts in a representative capacity when he or she brings an action to enforce claims of the trust, and that the beneficiaries of the trust may themselves sue as the real parties in interest. *See* Civ.R. 17(A) (A "trustee of an express trust * * * may sue in his [or her] name as representative without joining with him [or her] the party for whose benefit the action is brought.").

{¶ 84} In short, at the time Cynthia's claims were tried, Cynthia, a beneficiary of the Dibert Trust, had brought claims, in her individual capacity, against Gerald, in his individual capacity, for actions Gerald allegedly had done as co-trustee of the Dibert Trust. Both Cynthia and Gerald, in their individual capacities, were parties to the litigation as a result of Gerald's complaint. Finally, Cynthia was a real party in interest regarding the Dibert Trust claims as a beneficiary of that trust. Although Cynthia's original counterclaim arguably violated the "same capacity" requirement, Gerald failed to raise that defense, and Cynthia's amended counterclaim, filed with the court's permission, corrected those errors.

{¶ 85} Gerald's second assignment of error is overruled.

### IV. Adjudications by Recused Judge

{¶ 86} In his third assignment of error, Gerald claims that Judge Reisinger, who had recused herself in February 2009, erred in adjudicating matters in this case in late 2009 and in 2013, after the judge who had been handling the case recused himself. Gerald claims that, once Judge Reisinger recused herself in February 2009, she should not have further participated in this litigation.

{¶ 87} "The disqualification of a judge is an extraordinary remedy." *In re Disqualification of Capper*, 134 Ohio St.3d 1271, 2012-Ohio-6287, 984 N.E.2d 1082, ¶

26. R.C. 2701.03 sets forth the procedures for seeking disqualification of a common pleas court judge for prejudice. Under that statute, a party or the party's attorney may file an affidavit of disqualification with the clerk of the Supreme Court of Ohio. R.C. 2701.03(A). The affidavit must meet several requirements, as set forth in R.C. 2701.03(B). If a proper affidavit is submitted, the chief justice of the supreme court or his or her designee determines whether the trial judge is biased or prejudiced. R.C. 2701.03(D), (E).

{¶ 88} The procedure set forth in R.C. 2701.03 provides "the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced." *Jones v. Billingham*, 105 Ohio App.3d 8, 11, 663 N.E.2d 657 (2d Dist.1995); *see, e.g., State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 62; *State v. Hudson*, 2d Dist. Clark No. 2014 CA 53, 2014-Ohio-5363, ¶ 25; *State v. Galluzzo*, 2d Dist. Champaign No. 2004-CA-25, 2006-Ohio-309, ¶ 15. "A court of appeals does not have authority to rule on the disqualification of the trial judge or to void a judgment of the trial court on that basis." *Easterling v. Hafer*, 2d Dist. Montgomery No. 24950, 2012-Ohio-2101, ¶ 9.

{¶ 89} On February 13, 2009, within days of being sworn in as a newly-elected judge, Judge Reisinger issued an order that she "recuses herself and Brett A. Gilbert, Judge from this case, because of conflict of interest." Judge Newlin, the retiring judge, was appointed by the Supreme Court of Ohio to continue hearing the case. The order did not provide details regarding the purported conflict of interest.

{¶ 90} On September 22, 2009, Judge Newlin indicated his intention to recuse himself from considering a particular motion to compel discovery regarding Peoples Savings Bank. Judge Newlin stated, "The undersigned has had an ongoing relationship

with the management of Peoples Savings Bank which may make Plaintiff uncomfortable with the undersigned proceeding with a decision on the motion." On September 29, the day after a pretrial conference, Judge Newlin issued an order recusing himself from considering the motion to compel discovery and returning the matter to Judge Reisinger for decision.

{¶ 91} On October 13, Judge Reisinger scheduled a pretrial hearing on the motion for December 7, 2009, and the hearing was apparently held as scheduled. On December 17, 2009, Judge Reisinger overruled the motion to compel, finding that the bank had produced the documents in its possession in compliance with the subpoena, with the exception of Cynthia's financial statements. The court found that Gerald had not overcome the bank's mandate to maintain its customers' privacy, and indicated that Gerald could request those documents from Cynthia directly.

{¶ 92} Gerald did not object, at any time, to Judge Reisinger's limited participation in the litigation to resolve his motion to compel discovery regarding Peoples Savings Bank. Gerald could have sought disqualification under R.C. 2701.03, but he did not. In addition, Gerald has neither argued nor demonstrated the nature of Judge Reisinger's alleged bias or that he was prejudiced by Judge Reisinger's conduct in 2009.

{¶ 93} Judge Newlin recused himself from the case on June 26, 2013, and on June 27, Judge Reisinger issued an order, which informed the parties that she would be "finalizing the matter" and set an attorney conference for August 2. On August 23, Gerald's counsel wrote a letter to the court, identifying the following circumstances:

A. At the first pretrial, Judge Reisinger reported to both counsel that she previously had communications with the Defendant Cindy Carpenter.

B. The Judge had also been a customer of the flower shop and tux rental business owned by Cindy Carpenter.

C. Approximately three years ago, the Judge indicated that she had been cornered at the flower store for an extensive interview by Carpenter about her dispute with Gary Dibert.

D. The Judge stated that she no longer had a clear memory of what was said, but asked [Gerald's counsel] if there was any objection to her serving since Judge Newlin had recused himself.

E. Judge Reisinger had served as a substitute for Judge Newlin at the time a hearing was being held concerning the People's [sic] Bank refusing to honor a subpoena * * *. There was conversation with Cindy Carpenter and the Judge instructed Cindy Carpenter to turn over the document requested and Carpenter responded that she wasn't sure she had it, but she would look. That Motion was then dismissed and the subpoena was never completed. The Pickering Trust was eliminated and all funds disbursed without any further contact with the People's [sic] Bank.

F. With all of the above, the Court inquired of [Gerald's counsel] whether he had any objections to Judge Reisinger staying on the bench and she suggested that he talk with his client. Judge Reisinger stated that she could put all past information from her mind and she did not have a clear memory of any further information.

G. [Gerald's counsel] met with his client, Gary Dibert, immediately. At that time, there was no additional information or any reason to believe why

Judge Reisinger would not, in fact, be fair and impartial.

H.   Subsequently, the Plaintiff Gary Dibert has received new information that has been considered and it has been determined by counsel that it is in everyone's best interest to have that information known.

I.   Defendant Cindy Carpenter is now living with Ruth Zerkle who is believed to be a close contact and friend of Judge Reisinger, but the only source of that information is unsupported hearsay.   However, if the Court does have a close relationship, either socially, politically or professionally, it needs to be considered.   Ruth Zerkle had a very close relationship with Allen Mitchell who is a relative by marriage to Gary Dibert.   He informed Mr. Dibert that the separation between and [sic] he and Ms. Zerkle had a great deal to do with the fact of the constant bombardment against Gary Dibert from Ruth Zerkle and other associates including her close friend, Cindy Carpenter.

{¶ 94} On September 4, Judge Reisinger filed an entry indicating that a conference call had been held with counsel and the special fiduciary on September 3 to discuss the August 23 letter.   The entry further stated that, "based on the representations of the Court," Gerald's counsel withdrew his request for Judge Reisinger to recuse herself and that Judge Reisinger would continue to preside.

{¶ 95} Gerald did not file an affidavit of disqualification with the clerk of the Ohio Supreme Court, and the trial court's September 4 entry indicates that Gerald agreed to Judge Reisinger's continued participation in the litigation.   Even if we could consider whether Judge Reisinger was biased or prejudiced, Gerald has waived any claim that

Judge Reisinger erred in failing to recuse herself in September 2013 and in continuing to proceed over the matter.

**{¶ 96}** Judge Reisinger ultimately recused herself in November 2013, when Gerald indicated that he intended to call her father as a witness at trial. There is no evidence that Gerald was prejudiced by Judge Reisinger's conduct up to that point, and to the extent that Judge Reisinger's January 22, 2014 entries had any effect (considering that Judge Rapp had been appointed prior to their filing), those entries merely memorialized decisions that had been made prior to the recusal. Gerald has not suggested that Judge Reisinger's decisions were affected by a conflict of interest or bias. In addition, Judge Rapp, who was appointed to preside over the matter after Judge Reisinger's recusal, reaffirmed Judge Reisinger's decisions after an independent review.

**{¶ 97}** Gerald's third assignment of error is overruled.

### IV. Denial by Successor Judge of Gerald's Motions for Leave
### to File Amended Answer and to Close the Case

**{¶ 98}** Gerald's fourth assignment of error, as articulated and argued in his brief, differs somewhat from his fourth assignment, as identified in his "statement of errors presented." Both concern Judge Rapp's denial of Gerald's renewed motion to amend his answer and his motion to close the case.

**{¶ 99}** On appeal, Gerald does not challenge Judge Reisinger's decision denying his motion to amend his answer. He acknowledges that his motion was "appropriately" overruled by Judge Reisinger during the trial proceedings as untimely and that "to grant the motion during the proceeding would be * * * prejudicial to counterclaimant."

**{¶ 100}** Gerald claims, however, that once Judge Reisinger recused herself in

November 2013 and a new judge was appointed, Cynthia would not have been prejudiced by the amendment of his answer to the counterclaims. Gerald states that his renewed motion to amend his answer was made ten months after the proceedings before Judge Reisinger and four months before the bench trial to Judge Rapp. Gerald claims that "undue prejudice to Carpenter no longer existed" and that, pursuant to Civ.R. 15, the interests of justice supported granting his motion to amend his answer.

{¶ 101} Civ.R. 15(A) provides:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires. * * *

{¶ 102} Despite the liberal policy in granting motions to amend, the appellate review of a trial court's decision regarding a motion to amend consists of determining whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made. *Han v. Univ. of Dayton*, 2015-Ohio-346, 28 N.E.3d 547, ¶ 57 (2d Dist.), citing *Wilmington Steel Prods., Inc. v. Cleveland Electric Illuminating Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). "Justice does not require the granting of leave when a proposed amended complaint, not submitted as a matter of right, seeks to add new parties or seeks to assert a completely new claim, 'where a plaintiff fails to make a prima facie showing of the new matters sought to be pleaded.' " *Han* at ¶ 58,

quoting *Wilmington Steel Prods.* at 123.

{¶ 103} At the outset, we note that Gerald's proposed amended answer is not part of the record. On the second day of trial (October 31, 2013), the trial court reiterated that it would not permit Gerald to file an amended answer, but it would permit the filing of his motion for leave so that it would be part of the record. The court further stated that it would allow Gerald to proffer the amended answer at the next hearing. However, at the hearing on November 27, 2013, the third day of trial, the parties discussed the proffer with the court, and the trial court stated that it did not "believe a proffer would be appropriate at this time." No proffer was made, and the proposed amended answer was not filed.

{¶ 104} Judge Rapp later permitted Gerald to file his proposed amended answer to the amended counterclaim so that it would be part of the record. (*See* January 9, 2015 Entry.) Appendix A-19 of Gerald's appellate brief is the first page of a proposed amended answer to Cynthia's amended counterclaim. The first page indicates that the document was filed at 8:38 a.m. on January 15, 2015 in the Champaign County Family Court. However, the docket of this case does not reflect the filing, and the document itself is not in the record.

{¶ 105} Gerald's trial memorandum, filed September 25, 2013, included allegations that he was owed money from the Dibert Trust and that the trust should be reformed. Specifically, he responded to Cynthia's first counterclaim, stating that the Trust owed him $486,709.11; he argued with respect to the fifth counterclaim that the trust should be reformed to allow him to exercise the option to purchase land within 90 days of Jane's death; and he asserted with respect to the twelfth counterclaim that the trust owed him $105,740.86. Gerald's proposed amended answer sought "repayment of

the loans he made to the trust at the time of his Father's death."   (Doc. #118; Gerald's motion for leave to file an amended answer)

{¶ 106} Judge Rapp addressed Gerald's motion to file an amended answer on two occasions.   On September 2, 2014, the trial court issued an order following an August 24 pretrial conference, during which the parties and the court reviewed "outstanding trial issues and motions as well as settlement issues."   The court stated that the parties "reviewed the status and merits of the November 27, 2013, Motions of Plaintiff," namely Gerald's motions for leave to file an amended answer and his motion to close the case. The court overruled the motions "for reasons readily apparent in the record."   The motion for leave to amend Gerald's answer was again addressed on January 9, 2015.   The trial court again denied the motion as untimely and/or without merit.

{¶ 107} We find no abuse of discretion in the trial court's denial of Gerald's motion for leave to file an amended answer.   When Judge Rapp considered Gerald's motion for leave to file an amended answer in September 2014, the case had been pending for approximately seven years, and the court had previously held two days of trial.   The issue regarding Gerald's option to purchase trust property had already been addressed by the parties and the court.   Although Gerald asserted that Cynthia had been aware of the evidence that supported his claims that the Dibert Trust owed him money, Gerald offered no explanation why he waited until just before trial to raise his claims.   In light of the late stage of the litigation at the time Judge Rapp ruled on Gerald's motion, we cannot conclude that the court abused its discretion in finding that Gerald's motion was untimely.

{¶ 108} Gerald also contends that Judge Rapp erred in denying his "motion to close the case."   In that motion, Gerald had asked the court to order Traul, as special

fiduciary, to determine what Gerald and Cynthia each owed the Dibert Trust and to provide Gerald a right to purchase the land using reformed language; Gerald asked the trial court to terminate the case. Given the history of the litigation and the contentious unresolved issues between the parties, the trial court did not abuse its discretion in proceeding to trial on the issues pled.

{¶ 109} Gerald's fourth assignment of error is overruled.

### V. Attorney Fees

{¶ 110} Gerald's fifth assignment of error claims that the trial court committed plain error when it awarded $105,127 in attorney fees and $719.50 in costs to Cynthia. At the hearing on attorney fees and costs, Gerald asserted that Cynthia prevailed on the four counterclaims which were not strongly contested and that she lost on her remaining counterclaims, which were added in her amended counterclaim.

{¶ 111} On appeal, Gerald's principal argument is that Cynthia's counterclaims were not validly presented to the trial court, and thus Cynthia should not have been awarded attorney fees and costs to present those claims. He emphasizes that Howard Traul was appointed special fiduciary of the Dibert Trust and that he was substituted for Cynthia in her capacity as co-trustee of the Dibert Trust. Gerald does not claim that the trial court lacked the authority to grant attorney fees and costs, nor does he contest the amount of attorney fees and costs that were awarded.

{¶ 112} As discussed above, we conclude that Cynthia's counterclaims related to the Dibert Trust were properly before the trial court. Prior to the filing of Cynthia's amended counterclaims, Gerald did not challenge Cynthia's assertion of counterclaims related to the Dibert Trust in his answer or otherwise. Cynthia, individually, was a party

to the litigation, and in her individual capacity, she properly brought a permissive counterclaim as a beneficiary of the Dibert Trust against Gerald for his actions as co-trustee of the Dibert Trust. (Whether Cynthia believed the counterclaim to be compulsory, rather than permissive, is irrelevant.) Cynthia ultimately litigated four of her counterclaims successfully, and she obtained a judgment in favor of the Dibert Trust totaling $287,786.32.

{¶ 113} As noted by the trial court, R.C. 5810.04 provides:

In a judicial proceeding involving the administration of a trust, including a trust that contains a spendthrift provision, the court, as justice and equity may require, may award costs, expenses, and reasonable attorney's fees to any party, to be paid by another party, from the trust that is the subject of the controversy, or from a party's interest in the trust that is the subject of the controversy.

The Official Comment to this section notes, in part, that "[t]he court may award a beneficiary litigation costs if the litigation is deemed beneficial to the trust. Sometimes, litigation brought by a beneficiary involves an allegation that the trustee has committed a breach of trust." The trial court expressly found that Cynthia's litigation was beneficial to the trust.

{¶ 114} Pursuant to R.C. 5810.04, Cynthia sought attorney fees totaling $145,127 for services rendered after August 2, 2013; she did not seek reimbursement of attorney fees for the time period in which the Pickering Trust claims were pending. The trial court considered the reasonableness of the fees charged, the results obtained and the counterclaims that were dismissed, Cynthia's own breach of fiduciary duty (for which she

voluntarily executed a note to the Dibert Trust for $70,000), Gerald's deposition costs, and the interests of justice and equity. The court concluded that it was just and equitable that Cynthia be granted an award of attorney fees in the amount of $105,127 and deposition costs of $719.50, both to be paid from the interest that Gerald, as a contingent beneficiary, may be entitled to receive from the Dibert Trust upon the death of the life beneficiary (Jane). We find no error in the trial court's determination.

{¶ 115} Gerald's fifth assignment of error is overruled.

## VI. Conclusion

{¶ 116} The trial court's judgment will be affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Quentin M. Derryberry, II
Stanley R. Evans
David R. Watkins
Hon. James S. Rapp
(by assignment)